COVINGTON *vs.* THE STATE OF GEORGIA.

1. Admissions by the prisoner which only tend to prove his participation in the crime charged, are not direct but circumstantial evidence; and in charging the jury upon them, the court should not characterize them as a confession, since doing so would imply that the prisoner had acknowledged his guilt.
2. In charging the jury, it is error to assume that the prisoner has made a confession, and then go on to instruct as if the confession were already established.
3. The indictment not denominating the prisoner a principal in the second degree, nor an accessory, but simply charging him as though he were one of the principals in the first degree, the instructions given by the judge, relatively to the distinction as to whether the prisoner could be convicted as principal at all, or other than as accessory before the fact, with regard to presence, etc., were correct. The judge did not speak of the prisoner as absent but as present, and told the jury what would constitute presence. (Rep.)

October 14, 1887.

Admissions. Evidence. Confessions. Charge of Court. Before Judge RICHARD H. CLARK. Fulton Superior Court. March Term, 1887.

Reported in the decision.

WIMBISH & WALKER; L. WARDLAW SMITH, for plaintiff in error.

C. D. HILL, solicitor-general, for the State.

BLECKLEY, Chief Justice.

The chicken house of Lawrence, on Hollins street in the city of Atlanta, was broken open on a Sunday night and thirteen chickens stolen therefrom. Four of the chickens were afterwards found in the yard of a woman named Morgan, two hundred or three hundred yards from Lawrence's premises. The prisoner and one Cosby were jointly indicted for the burglary. Cosby admitted his

share ·in the transaction, and entered a plea of guilty. Covington was tried, convicted, and sentenced for six years in the penitentiary. He moved for a new trial, and it was refused. No witness for the State saw the offence committed, or knew who committed it. Cosby was introduced by the prisoner, and testified that the prisoner was not concerned in it. The case, as against the prisoner, rested wholly on circumstantial evidence, including certain admissions made by him before the trial, together with his statement at the trial. He was arrested by the police some two weeks after the burglary, carried to the station-house, and there Cosby, who was also in custody, repeated, in the hearing of the prisoner, the prosecutor and a policeman, a statement which he (Cosby) had previously made to the policeman. The prisoner, himself, also made a statement at the same time and place, which was heard by the policeman and the prosecutor, both of whom testified on the trial. The policeman testified to what Cosby said in the prisoner's hearing and also to what the prisoner said.

Cosby's statement in the prisoner's hearing was, in substance, that he and prisoner were at a boarding-house together; that they went from there to church, and from church to where they got the chickens; Cosby went in, got two chickens out of a hen-house on a lot close to the church, (from the description given, it was prosecutor's lot,) and gave them to prisoner, and prisoner held them whilst he (Cosby) went back and got two more; they carried them to a woman's house (Morgan's) and there left them; prisoner then proposed to go back to church, wanting to get rid of Cosby; they went off and left the chickens at that place (Morgan's) that night.

The prisoner's admissions, as detailed by the policeman, were, in substance, that he held the chickens that night; that he went with Cosby to church; that he got the chickens and carried them to this woman's house; that he carried the chickens off and left them at her house; that

Cosby told him to wait in a certain vacant space (there is such a space by the side of prosecutor's house) until he (Cosby) came back; that he did not know what Cosby was going after; that Cosby had a sack, went off, got two chickens, came back, gave them to prisoner, then went off again and returned with two more.

As detailed by the prosecutor, the prisoner's admissions were, in substance, that he got into trouble by falling in with another fellow; that he was going down to Willow Tree church, and struck up with Cosby, who said to him, "Let's go down to church"; that they went to church, and Cosby said, " Let's go up here to Hollins street"; and they went up there, and Cosby stopped him at a certain place, went off, got a chicken under each arm and gave them to him to hold, then went off and got two more, and brought them to this place where they found the chickens; that he (the prisoner) told Cosby to go on, he did not want to get into any trouble in that matter, and Cosby said, " There is nothing wrong about it, and we will leave these chickens here and try to sell them and get some money"; that he (prisoner) held the chickens given to him to hold while Cosby was gone for the others.

The material admissions in the prisoner's statement to the jury at the trial were, that he and Cosby went to Willow Tree church together on Sunday night; finding the congregation at prayer, they stood outside, and Cosby requested him to go off with him a short distance; they went about twenty-five yards from the church, and there, at Cosby's request, prisoner waited; in a few minutes Cosby returned, with two chickens under his arm; prisoner did not know where he got them; they went (prisoner going reluctantly) 200 or 300 yards to a lady's house; prisoner waited for Cosby, who came out with a sack, requested prisoner to take it, saying he would go a certain way and come back another; prisoner said, " No, I am going over here to church," threw down the sack, and went to church; Cosby took up the sack and went off, but got

to church before it broke up, and he and prisoner went on home; . . . afterwards when prisoner was taken to the station-house, Cosby said to him, "Well, partner, they've got us"; prisoner replied, "Got who? I am not your partner."

The court charged the jury, amongst other things, thus: " The testimony, gentlemen of the jury, the evidence in this case, is of two sorts; it is partly positive and it is partly circumstantial. Whatever evidence, so far as it connects the defendant in this case with it, as his confession, if you believe that confession and all the confession, if you believe from that confession that he was a partaker in this crime in the manner I have stated to you above, and that that is sufficient to make you believe it, and there is nothing in the evidence to make you disbelieve it, or to have a reasonable doubt about it, then it would be your duty to find him guilty, otherwise, not guilty. If the confession, in your judgment, is not sufficient to bring your minds to the conclusion that he is guilty as I charge you, then you look to the other evidence in the case, the other kind of evidence in the case, which is circumstantial."

1. We think it is not improbable that the learned judge may have been misreported as to the language used in this charge, but we are bound to take it as we find it in the record; and so taking it, it is amenable to two objections. The first is, that it deals with mere admissions of inculpatory facts as if they were confessions of guilt. There is a a broad distinction between the two. When a person only admits certain facts from which the jury may or may not infer guilt, there is no confession. We may use the word confessions for admissions, but to sum up mere inculpatory admissions and denominate them a confession, implies that they amount to a confession of guilt. The judge (as he is represented) did not classify this evidence properly. It is not direct, or, as he terms it, positive evidence of guilt, but it belongs to circumstantial evidence, the admitted facts being circumstances proved by the prisoner's admis-

sions, instead of being proved by some witness who was present when these facts transpired. If the same facts had been testified to by a witness who saw them transpire, that would have been circumstantial evidence, because no witness saw this man participating in the burglary. He was not seen at the broken house or on the premises, and he does not admit that he was ever at the chicken-house, or saw the house, or knew there was such a house, or knew a burglary had been committed. He admitted facts which were very powerful evidence against him of complicity in the burglary, but all the facts he admitted could have existed consistently with his perfect innocence of the crime of burglary. And it seems to have been his design in all his statements not to inculpate himself, but to exculpate himself. He made the admissions, not for the purpose of conceding that he was guilty, or with any view to confess his guilt, but in the line of a denial of guilt; not an express, but an implied, denial. The view we take of that evidence brings it under a rule recognized by this court in *Dumas vs. The State*, 63 *Ga.* 600. It was there held that, where a prisoner did not confess his guilt, but only admitted his presence at the scene of the crime, the court ought not to instruct the jury as though he had made a confession of guilt.

2. The next objection to this charge is, that the judge assumes that a confession of some sort had been made. He says, in verifying the grounds of the motion for a new trial, that the parts of the charge embraced in the motion ought to be construed in the light of the whole charge, and we have so done. We have read the charge, and nowhere in it does he instruct the jury to decide whether a confession was made. He enters upon the subject by assuming that a confession was in evidence. If there had been a confession, this is not a fit way to instruct the jury upon it. A preliminary instruction would be, to look to the evidence and see whether any confession appeared.

So we think on two grounds this charge was erroneous, and for that reason the judgment is reversed.

3. There is another exception to the charge in the motion for a new trial, which relates to instructions given with reference to what would constitute this prisoner a principal, and subject him to conviction under this indictment, which does not denominate him a principal in the second degree or an accessory, but simply charges him as though he were one of the principals in the first degree. The argument here was made as though the distinction involved in the motion for a new trial was one between principal in the first degree and principal in the second degree; but on looking at the motion itself we find it is not involved. On the contrary, the motion presents the question whether, on the enumerated circumstances, the prisoner could be convicted as principal at all, or other than as an accessory before the fact; and undoubtedly the judge's instructions with regard to presence, etc. would be correct relatively to that distinction. The judge did not speak of the prisoner as absent, but as present, and told the jury what would constitute presence. So that as the motion stands, there was no error in that ground.

Judgment reversed.