## 162. JOHNSON v. THE STATE.

1. The statements made by the prisoner while under arrest, even if they amounted to a confession of guilt, were not voluntary and induced without "the slightest hope of benefit or the remotest fear of injury." It was therefore error to admit such statements in evidence.

2. Where all the evidence in the case wholly fails to connect the defendant with the commission of the offense charged, but, on the contrary, presents reasonable hypotheses of his innocence, a verdict of guilty is without evidence to support it, and therefore contrary to law, and such verdict, on motion for a new trial, should be set aside on this general ground.

Accusation of larceny from the house, from city court of Nashville—Judge Peeples. November 6, 1906.

Submitted January 28,—Decided February 4, 1907.

*Hendricks, Smith & Christian,* for plaintiff in error.

*W. D. Buie, solicitor,* contra.

HILL, C. J. The plaintiff in error was tried on an accusation in the city court of Nashville, charging him with the offense of larceny from the house. He was found guilty by the jury, and he made a motion for a new trial, which was overruled. This judgment was excepted to and assigned as error. Besides the usual and general grounds of error, an additional ground of error is assigned, excepting to the judgment of the court in admitting certain statements made by the defendant, while under arrest, as a confession of his guilt, it being insisted that the said statements did not amount to a confession of guilt, and if a confession, it was "not made voluntarily, but was induced by the hope of reward and with the fear of injury and punishment." We will first consider the statements made by the defendant while under arrest, for the purpose of determining if such statements amounted to a confession of guilt. We quote the evidence on this point in full, as well as the evidence just preceding the statements. The prosecuting witness, whose property (a gold watch) was alleged to have been stolen from his house, testified as follows: "He suspicioned the defendant and arrested him, and 'phoned the sheriff, who came over to Cottle and deputized witness to continue the arrest, and to take defendant to Nashville and put him in the common jail in Berrien county. He started with him, and got to the river, within about one and one half mile of Nashville. Just before they

reached the river, which was a distance of about six miles from Cottle, witness said to defendant, 'Bill, I do not see why you would treat me this way, as good as I have been to you.' The defendant said, 'I shore does hate it. I wouldn't have had it to happen for a hundred dollars.' . . Witness said, 'All I want is my watch;' whereat defendant said, 'If you will let me go back, I will get your watch.'" This was all the conversation on the subject between the defendant and the witness. Immediately after this the witness stopped and turned round and went back, and when they got in about a quarter of a mile of Cottle, witness stopped his horse and got out of his buggy, and, while he was tying the horse, the defendant got out of the buggy and started to walk on, and was several times told by the witness to stop, but he got faster, and the witness shot at him four times. The defendant ran through the field, passing by his own house, went into the swamp, was surrounded by a band of men, arrested, and brought back to jail. The witness further said that when the above conversation took place, he had his pistol, and the defendant knew it.

Does the language quoted above amount to a confession of guilt? "A confession is limited in precise scope and meaning to the criminal act itself. It does not apply to acknowledgment of facts merely tending to establish guilt, since a damaging fact may be admitted without any intention to confess guilt." 6 Am. & Eng. Enc. of Law, 521. Chief Justice Bleckley, in the case of *Covington* v. *State,* 79 *Ga.* 690, says that there is a broad distinction between mere admissions of inculpatory facts and confessions of guilt. "When a person only admits certain facts from which the jury may or may not infer guilt, there is no confession." In this statement now under consideration, there are really no inculpatory facts, and the entire language is perfectly consistent with the innocence of the defendant. His expressed regret could be as reasonably applied to the fact of his arrest, charged with the offense, as it could be construed into an admission of his guilt; and his declaration that if the prosecutor would let him go back, he would get his watch, was more the expression of a desire to get away than anything else, or that, while innocent, he knew where the watch was. The above statements of the defendant, while merely evidentiary facts, not necessarily inconsistent with innocence, if otherwise admissible, were properly submitted to the jury to be

considered with the other testimony in the case. There is nothing in the record showing that the court admitted the statements as a confession, or as evidence of inculpatory admissions that might tend to show the defendant's guilt. But we think these statements of the defendant, whether amounting to a confession or of less probative value, were inadmissible under section 1006 of the Penal Code, and under the rules laid down by many standard authorities and decisions of the courts on this subject.

It would be fruitless to cite adjudicated cases for the purpose of endeavoring to deduce from them what quantum of proof, in a case presented, is adequate to create, by the operation of hope or fear, an involuntary condition of the mind; for all the decided cases necessarily rest upon the state of facts which existed in the particular case, and therefore furnish no certain criterion for any general rule of law by which the admissibility of a confession could be determined. Such rule must be evolved from the facts of each particular case. 2 Taylor Ev. §872; Brand v. U. S. 532; *Green* v. *State,* 88 *Ga.* 516. In this State, the test, as laid down by the Penal Code, §1006, must be applied to the facts and circumstances of each particular case. Let us apply the facts in this record to this rule of the code to see if the statement now under consideration was made as a voluntary confession, without being induced by the "slightest hope of benefit or remotest fear of injury." Consider the situation of the defendant as disclosed by the evidence in the record. His employer, a white man, claims to have lost his watch by theft. Without any apparent reason, he suspects the defendant. Without warrant of law he seizes him, searches his person, and searches his house and the person of his wife. His searches are fruitless, but he continues to hold the man under arrest, and telephones to the sheriff to come over; the sheriff comes, and directs the prosecutor to take the man to jail. The prosecutor had a pistol on his person, which was seen by the defendant. After proceeding some distance on the way to jail, the prosecutor, according to his own testimony, said to the defendant, "Bill, I do not see why you would treat me this way, as good as I have been to you." The defendant said, "I shore does hate it. I wouldn't have had it to happen for a hundred dollars." The prosecutor said, "All I want is my watch;" whereat the defendant said, "If you will let me go back, I will get your watch." Before this statement was made, as

the prosecutor significantly states, the defendant saw his pistol. The foregoing is what the prosecuting witness swore; and assuming that he stated *all* that took place, we will apply the test of admissibility as laid down by our code. What did the words "*All* I want is my watch" imply? Did they not necessarily mean to the defendant that if he would deliver the watch to the prosecutor, he would let him go free? Did not this statement raise in the mind of the defendant "the slightest hope of benefit?" It seems to have been so understood by the defendant; for he replied, "If you will let me go back, I will get your watch." In the old English case of Rex *v.* Francis Jones, British Crown Cases, Russell and Ryan, 152, the prosecutor said to the prisoner, under arrest for stealing his money, "He only wanted his money, and if the prisoner would give him that, he might go to the devil if he pleased." Upon which the prisoner took 11*s* and 6½*d* out of his pocket and said "that was all he had left of it." Held, that the confession ought not to have been received. Not only did the language, "All I want is my watch," raise the flattery of hope to the defendant, but the language preceding it, in connection with the sight of the pistol, and in view of the unlawful seizure and search of the defendant and of his wife and his house, was sufficient to arouse the "remotest fear of injury." The first language of the prosecutor was an implied threat; the second statement was an implied promise. Either one being true, the confession was not admissible. The tendency of modern judicial opinion is to refuse to admit such confessions when there is any reasonable ground to believe that they were induced by hope or fear. And our Penal Code, §1006, supra, in tender regard for life and liberty, adopts the strongest and most extreme rule. In arriving at the conclusion in this case that these statements are not admissible, we have been influenced not only by the language itself, but by the situation presented by the evidence,—the dominating power and influence of the white man who had arrested, as he states, on mere suspicion without a warrant, a negro, and unlawfully searched him, his wife, and his house, and was taking him to jail.

Besides, these statements, even if admissible, are entirely consistent with the defendant's innocence. There was no other evidence whatever, so far as is shown by the record, indicating his guilt or in any manner connecting him with the larceny. The

only material testimony was that of the prosecutor.  He stated, that the watch was in his right-hand vest pocket, and that he had taken off his vest and hung it on a nail by the fire-place in the end of the house; that he was moving, and the defendant was employed, with several other negroes, in loading a wagon with his household goods; that the defendant was the driver of the wagon, and, so far 'as the witness knew, did not go inside of the house at all; that the other hands at work were in the house and assisting in getting the things out of the house and loading them in the wagon; that part of them remained in the house while the other part went to the switch on the railroad, a hundred and fifty yards away from the house, to load the goods from off the wagon into the car; that there was a crowd of other people there that day, going in and out of the house; that the above-named persons could have stolen the watch; that they had a good opportunity to steal it, a better one than the defendant; that the defendant did not go in the house, so far as witness knew, or so far as any one else knew who was there at that time; that he was seen at one time with his hand placed up on the door, but he was not seen to enter the house; that the defendant stayed by the wagon and held the mules while the goods were being loaded.  Another witness for the State testified, that he was assisting the prosecutor in moving; that the defendant was driving the team; that he backed the wagon up to the porch and held the team while they all brought out the household goods and put them on the wagon; then the defendant drove to the car, a hundred and fifty yards off, and the wagon was unloaded into the car; that once while they were loading, the defendant left the wagon for about five or ten minutes and said he was going to the lot or to his house, the witness did not remember which. The witness did not see the defendant in the house.  If he went in there, he did not know it.  He did see him one time on the porch. A crowd of people were going in and out of the house that day.

This was the testimony in the case, and, it will be seen, it wholly fails to connect the defendant with the larceny of the watch.   All the other persons present had a better opportunity for stealing the watch than the defendant.    Nevertheless, the prosecutor "suspicioned" the defendant, according to his statement, arrested him, searched him, his wife, and his house, and did not find the watch.  It is inconceivable how the jury, under the

evidence, could have come to the conclusion that the defendant was guilty. Instead of showing beyond a reasonable doubt his guilt, it shows beyond a reasonable doubt his innocence. Every witness places him outside of the house, in charge of his wagon and team, with no opportunity to steal the watch. The evidence makes it much more probable that one of the others present took the watch. They were all inside the house, with ample opportunity to take it; besides, many other people were going in and out of the house on that day. And the prosecutor declares that every one of the others "had a better opportunity to steal the watch than the defendant." Considered in the light of all the facts, the verdict of the jury was as groundless as the "suspicion" of the prosecutor. We are perfectly clear that the verdict is wholly without evidence to support it, and therefore contrary to law, and that the judgment of the court refusing a new trial should be reversed.

*Judgment reversed.*