### 10271.   NEAL *v.* THE STATE.

Conceding, but not deciding, that the court erred in charging the jury that if the evidence showed that apparatus for the distilling and manufacture of intoxicating liquor was found on premises "possessed or controlled" by the defendant, the State made a prima facie case, which would entitle the State to a verdict in its favor unless the defendant showed that the apparatus was there without his knowledge, this charge does not require a new trial, under the uncontradicted evidence, in which there was testimony as to incriminatory admissions of the defendant which, under the particular facts of the case, amounted to a confession of guilt. (STEPHENS, J., dissents.)

Indictment for manufacture of liquor; from Glascock superior court—Judge Walker. November 27, 1918.

*M. L. Felts,* for plaintiff in error.

*R. C. Norman, solicitor-general,* contra.

BROYLES, P. J. The indictment contained two counts. The first count charged the defendant with the offense of manufacturing alcoholic liquors. The second count charged him with knowingly permitting apparatus for the distilling and manufacturing of intoxicating liquors to be located on his premises. He was convicted on both counts. The court instructed the jury, in substance, that if the evidence showed that such apparatus was found on premises "possessed or controlled" by the defendant, the State made a prima facie case, and this would entitle the State to a verdict in its favor unless the defendant showed that the apparatus was there without his knowledge. This charge was excepted to. Conceding, but not deciding, that this charge was erroneous, it does

not require a new trial, under the facts of the case. The un-contradicted evidence, even eliminating all of the testimony of the witness Charlie Lewis, whom the defendant attempted to impeach, clearly showed that a complete distillery for the manu-facture of intoxicating liquors was located on the defendant's premises with his knowledge, and with, at least, his implied consent. This was established by the unimpeached evidence of the sheriff of the county, who testified to incriminatory admissions made to him by the defendant—which admissions, under the particular facts of the case, amounted to a confession of his guilt of the offense charged in the second count. This testimony of the sheriff was not contradicted by any other evidence, nor even by the defendant in his statement to the jury. Under these circumstances a verdict of guilty under the second count of the indictment was demanded, and the alleged error in the charge, if error, was harmless.

There was ample evidence to authorize the defendant's conviction under the first count of the indictment, and no error in the charge, as to this count, is complained of.

The remaining special grounds of the motion for a new trial are without merit. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Bloodworth, J., concurs. Stephens, J., dissents.*

STEPHENS, J., dissenting. I cannot concur with the majority of the court in the conclusion that the defendant's conviction was demanded. As I understand the evidence, there was an issue of fact for the jury as to whether or not the defendant had knowl-edge of the existence of a still upon his premises. While his statement is long and argumentative and full of irrelevancies, it can be construed only as a denial of such knowledge. He stated this (in referring to the branch on which the still was found): "It's a thick branch. I never had my foot in it before, until this still was found, and I didn't know anybody else ever did. As I stated about this,—I don't know anything about the spring and I have no occasion to visit my branches, and have no occasion to know of a still in there." He further said: "I ask you, gentle-men, to direct your attention to the fact that I have no oppor-tunity to be away from the office; that I have been there with a

two-man's job since they claim this distilling on my place. I don't know who it was. I never knew it at the time. I only discovered that since." This clearly and unmistakably amounted to a denial upon the part of the defendant of any knowledge whatsoever as to the existence of a still upon his premises. The jury had a right to believe this statement in preference to the sworn testimony. This certainly made an issue of fact for the jury's determination. Conceding, however, that the defendant may have, in an extrajudicial confession, admitted knowledge of the existence of a still upon his premises, such admission cannot be said to eliminate from the consideration of the jury the issue as to the knowledge of the existence of this still, made by the defendant's denial in his statement. Where the defendant, neither in his statement nor by testimony, denies an alleged extrajudicial confession, I hardly think it can be said that such undenied confession can be considered by the court as proof of guilt and as eliminating the issue. It is a fundamental doctrine of criminal law that "confessions of guilt should be received with great caution. A confession alone, uncorroborated by other evidence, will not justify a conviction." Penal Code, § 1031. What degree of corroboration will warrant an inference of guilt is essentially a jury question. Even though there be no issue as to the fact of a confession having been made and as to the fact of corroborative circumstances, the inferences to be drawn from these undisputed facts are peculiarly for the jury. "Confession is a means of proof, and not proof." Wigmore's Principles of Judicial Proof, 538; 1 Greenleaf on Evidence, § 216; 2 Chamberlayne on Evidence, § 1592 et seq.; Wharton's Crim. Ev., § 625; 6 Am. & Eng. Enc. Law (2d ed.) 580. It cannot be said, as a universal rule, in every case where the facts are undisputed, that certain fixed and invariable inferences must be drawn from these facts. On a trial for murder all of the facts may be undisputed, yet the jury is left free to infer from these undisputed facts either malice or reasonable fears, i. e. murder or justifiable homicide.

Besides, the "incriminatory admissions made to [the sheriff] by the defendant—which admissions," in the language of the majority of the court, "under the particular facts of this case, amounted to a confession of his guilt of the offense charged," are, I respectfully submit, no more than "incriminatory admissions." The sheriff

testified: "I would consider it [the still] located on Mr. Neal's premises, because he told me he knew it was there. He told me that the Sunday we were there. He said he knew who operated it, and he said he would tell me if I would guess. I guessed A. L. Bales, and he said A. L. Bales don't run it.' He said he knew all about it. I don't know, I don't remember that he told me how many times he had been down there. The question that come up,— the question about the gun came up, and he said it was his gun and he loaned it to a man that was in the business, and he was sorry he did, and I asked him if he would tell me who that man was. He told me he knew about it. He said he wasn't having anything to do with it himself. I don't know that he told me that he gave his consent. No, sir, he didn't tell me who operated it. I can't remember that he told me that it was his farm; we talked about the farm and the place." However damaging to the defendant his statement to the sheriff may have been, it did not amount to a confession of the crime charged. A confession must consist in an admission of all the elements constituting the offense, and not an admission of only a part of the essential elements of the offense. "Unless the statement of the defendant is broad enough to comprehend every essential element necessary to make out a case against him it cannot be said to be a confession of guilt. . . Incriminating statements, to be the equivalent of a confession of guilt, must be so comprehensive as to include every act necessary to be proved by the prosecution in order to establish the defendant's guilt." *Owens* v. *State, 120 Ga. 296, 298, 299 (48 S. E. 22).* "A confession, in criminal law, is a voluntary statement made by the person charged with the commission of a crime or misdemeanor, communicated to another person, wherein he acknowledges himself to be guilty of the offense charged, and disclosing the circumstances of the act and the share and participation he had in it." Black's Law Dictionary. "A confession is a person's admission or declaration of an agency or participation in a crime, and is restricted to admissions of guilt." 3 Am. & Eng. Enc. Law, 439.

The statement of the sheriff tended to establish by way of admission *knowledge* only of the existence of the still on the part of the defendant. The statement contained no admission of the entire offense-charged, the offense being, to "knowingly *permit* or *allow*" a still upon one's premises. Nothing which the defendant

said to the sheriff admitted that the defendant "permitted" or "allowed" a still upon his premises, nor did it admit that defendant possessed or controlled the premises. The evidence of the sheriff, therefore, established no more than a mere inculpatory admission on the part of the defendant. Such an admission, said the Supreme Court in *Covington* v. *State, 79 Ga.* 687, 690 (7 S. E. 153), in the language of Chief Justice Bleckley, "is not direct, or . . positive evidence of guilt, but it belongs to circumstantial evidence, the admitted facts being circumstances proved by the prisoner's admission, instead of being proved by some witness who was present when these facts transpired."

The evidence having clearly made an issue as to the defendant's guilt or innocence, and the charge of the court excepted to having necessarily controlled the verdict, and being an erroneous statement of the law, the verdict should be set aside and a new trial granted.

The defendant was indicted under two counts. One charged him with distilling and manufacturing prohibited liquors, and the other charged him with knowingly permitting, having, and possessing distilling apparatus on his premises. He was convicted on both counts. Section 22 of the act approved March 28th, 1917, making it unlawful for any one "to knowingly permit or allow any one to have or possess or locate on his premises any apparatus for the distilling or manufacturing of the liquors and beverages specified in this act," provides that "when any such apparatus is found or discovered upon said premises the same shall be prima facie evidence that the person in *actual possession* had knowledge of the existence of the same, . . the burden of proof in all cases being upon the person in *actual possession* to show the want of knowledge of the existence of such apparatus on his premises." (Italics mine.) The evidence in this case showed that a distilling apparatus was found upon the premises of the defendant, upon which lived defendant's tenant or cropper, the defendant himself not living upon the premises, but controlling the same as landlord and visiting the same daily. Defendant in his statement, however, stated that the tenant had been on the place two years and superintended the entire farm just as if it were his, the tenant's. The judge charged the jury as follows: "The burden is upon the State to show that the apparatus was upon the premises or property

possessed or controlled by the defendant, and if the State shows that to your satisfaction, and that beyond a reasonable doubt, or that there was apparatus for making these liquors or beverages as enumerated and set out in the section of the law read to you on the premises in possession and control of the defendant, then the State has made out a prima facie case under the law, and, stopping there, the State would be entitled under the law to have a verdict in its favor, unless the defendant shows to you that such apparatus was there without his knowledge. The burden to show that he had no knowledge of the existence of such apparatus on his premises is upon him and not upon the State." This charge of the court was error, in that it instructed the jury that when such distilling apparatus was found upon premises *"possessed or controlled"* by the defendant the State had made a prima facie case which would *"entitle"* it to a verdict in its favor. One who possesses or controls premises is not necessarily the one in *actual* possession in the sense in which the term is used in this act. The expression *"actual possession"* means possession *in fact,* an actual and immediate occupancy of the premises. In 1 Words & Phrases (2d series), 97, *"actual possession"* is defined as follows: " 'Actual possession' of land consists in subjecting it to the will and dominion of the occupant, and must be evidenced by those things which are essential to its beneficial use. . . 'Actual possession' means possession in fact, effected by actual entry upon the premises and actual occupancy. . . It is necessary that the possession must be actual, etc. 'Actual' means real, visible. . . Actual possession is the same as pedis possessio or pedis positio, and these mean a foothold on the land, an actual entry, a possession in fact, a standing upon it, an occupation of it, as a real, demonstrative act done. It is the contrary of a possession in law, which follows in the wake of title." " 'Actual possession' exists where a thing is in the immediate occupancy of the party. 'Constructive possession' is that which exists in contemplation of law without actual personal occupation." Brown *v.* Volkening, 64 N. Y. 76, 80. The term "actual possession," as used in a penal statute of Texas, providing that any person leaving the dead carcass or body of any horse, etc., which died in the actual possession of such person, in any public road, or within fifty yards thereof, shall be fined etc., applies to cases where the animal dies while it is actually be-

ing used by the owner; that is, in his manual possession at the time of its death. Ogg *v.* State, 48 Tex. Cr. 231 (87 S. E. 348).

Since the law places the burden of showing absence of knowledge of the existence of a still upon the one in "actual possession" of the premises upon which the still was found, it must necessarily follow that "actual possession" in the sense here used means such close proximity to the premises as will reasonably lead to the inference that the party in possession had knowledge of the existence of the still. Such knowledge could justly be imputed to one in *actual* possession, pedis possessio, whereas it could not justly be imputed to one who merely owned the premises and had control thereof, but lived elsewhere. It will be seen, therefore, that where premises are immediately occupied by a tenant or cropper who actually lives thereon, and the owner or landlord, as the defendant in this case, does not live thereon, although such owner or landlord may be in control of the premises as owner, such control of the premises is not the *actual* possession in the sense of this act. The owner may not live upon the premises, and yet, from the particular circumstances, such as going over the place daily and inspecting it, etc., it may be inferred that he had knowledge of the existence of a distilling apparatus thereon. This inference would not arise, however, from the fact that he controlled the place, but would arise from all the facts and circumstances of the particular case going to show knowledge on the part of the defendant. The statute makes it unlawful for the owner of the premises, whether he lives thereon or not, to allow distilling apparatus thereon, but the statute makes *actual possession,* and not *ownership* or *control,* prima facie evidence of knowledge of the existence of the still on the premises. Ownership or control alone are not sufficient, without more, to authorize the inference that the owner knew of the existence of a still on his premises.

Where, in a criminal case, a prima facie case for the State is made, a verdict of guilty is not *demanded.* A prima facie case merely *authorizes* the jury to find a verdict of guilty under the evidence. It is, therefore, error for the court to charge the jury that a prima facie case under this act *"entitled"* the State to a verdict. The possession of distilling apparatus upon the premises of the defendant does not, as a matter of law, demand the defendant's conviction. Such possession merely authorizes the jury to

convict the party in actual possession of the premises. It is not a presumption of *law;* but is a presumption of fact. See the authorities collected and referred to in *Holliday* v. *State, 23 Ga. App.* 400 (98 S. E. 386) ; State *v.* Wilkerson, 164 N. C. 431 (79 S. E. 888).

I deem it unnecessary here to touch upon the grounds of the motion for a new trial upon newly discovered evidence, and upon the manner in which the jury was drawn.

I am of the opinion that the judgment should be reversed.