## STATE *vs.* WILLIAM SLOAN.

If an indictment be clearly defective, the Court upon motion will quash, whether the charge be for a felony or a less offence.

An indictment need not be certain "to a certain intent in every particular;" but it is indisputable, that when a statute enacts, that any of a class of persons who shall do or omit to do an act under certain circumstances shall be guilty of a crime, the indictment under that statute must describe the person indicted as one of that class, and aver that he did or omitted to do the act charged, under circumstances which make it a crime;

Therefore, where an indictment framed under chapter 38, Acts of 1869–'70, failed to aver that the accused was the President of a Railroad Company, in which the State had an interest, and also failed to aver that he had received the State bonds under some act of the Legislature or ordinance of the Convention, passed since May, A. D. 1865; *it was held,* that such an indictment was fatally defective, and should be quashed.

Motion to quash, heard before *Watts, J.,* at Fall Term, 1871, of WAKE Superior Court.

This was an indictment against the defendant founded upon a supposed violation of the 38th chapter of the acts of 1869–'70. Such parts and sections of the act as are material to the case

are set out in the opinion of the Judge. The charges in the indictment are also stated in an abbreviated form in the opinion. There was a motion to quash. The motion was sustained and the indictment quashed. The State appealed to the Supreme Court.

*Attorney General* and *Battle & Son*, for the State.
*Fowle* and *Bailey*, for the defendant.

RODMAN, J. We think there is no difficulty as to the rule, which Courts will in general observe, as to quashing indictments. If one be clearly defective, and would not support a conviction, the Court will quash it whether it be for a felony or for a less offence. Because in such a case it is useless to the State, and oppressive to the accused, to proceed to a trial which can amount to nothing. As by quashing, the recognizance of the prisoner is discharged, the Court, if the offence charged be a heinous one, and especially if there be danger that the prisoner will flee from justice, may in its discretion delay its decision for a reasonable time, to give the grand jury an opportunity to find a new bill. And whether the charge be of a felony or of a misdemeanor, if the motion shall require the decision of a difficult and important question of law, inasmuch as a refusal to quash does not amount to a final decision, and the question of law will still remain open on a motion in arrest of *judgment*, the Court will refuse to decide the question upon a state of facts which is only hypothetical ; as the accused may be acquitted, and so a decision become unnecessary. This is in conformity with the general practice of Courts, not to decide such a question until it shall be necessary to do so. This is about all that is meant, when it is said the Court has a discretion to quash.

The only question, therefore, is, does the present indictment so clearly fail to charge an offence that, no matter what may be

proved, all proceedings under it must end in the discharge of the accused.

The indictment is founded on a supposed violation of *chap.* 38 of the *Acts of* 1869-'70, *p.* 78.

That act enacts, Sec. 1, " It shall be the duty of the several Presidents or other officers of rail roads who have *secured* bonds or other securities of the State for the construction *of any road in which the State is interested, under an act of the General Assembly, or ordinance of a Convention passed since May, year of our Lord,* 1865," to file before the Governor and Superintendant of Public Works a certain statement.

It will be noticed that the word " secured," in this section, is senseless in the connection in which it is found. It may not unfairly or improperly for the present purpose, be supposed that the true word is "received." But if any thing turned upon it finally, it would be necessary to consult the original act as enrolled in the Secretary's office before accepting the substituted word.

Sec. 3, to some extent, changes the phraseology of Sec. 1. It enacts, " It shall be further the duty of every President or other officer of a rail road, *as provided in section first of this act,* and every *such* President or other officer is hereby required, to return to the public Treasurer subject to the joint order of the Governor and Superintendant of Public Works, as hereinafter prescribed, *all bonds of the State which have been issued under any authority of law* and which remain in the hands of any such President or other officer unsold or undisposed of," &c.

Section 4 requires the Governor to have notice served on every such President, &c.

Section 5 prescribes, that the time within which such President, &c., shall comply with the provisions of the first three sections of the act, shall be twenty days from the personal service above provided for.

Section 9 is in these words, " If the President or other

officer of any rail road company, *in which the State is interested within the purview of the first five section s of this act,* shall wilfully refuse or fail to comply with the said provisions thereof, every such President or other officer shall be deemed guilty of felony, and upon conviction shall suffer imprisonment in the State prison for not less than five years."

The other sections contain nothing material for the present purpose.

The counsel for the accused contends, that the indictment is clearly defective and fails to charge any offence; in this: 1, That the act, upon which the indictment is founded, relates only to Presidents, &c., of railroads in which the State is interested ; and the indictment does not any where charge that the accused was President of a road in which the State was interested.

The indictment, abbreviated by omitting every thing not material to the present question, charges:

1. That the accused, on a day after the ratification of the act, was, and continued to be President of the Wilmington, Charlotte and Rutherford Railroad Company.

2. That it became his duty, under the act aforesaid, to make a statement to the Governor, &c., and after being notified, &c., to return to the Public Treasurer "all bonds of the State which were issued under authority of law, and which remained in the hands of said William Sloan as President," &c.

3. That he was duly notified to report as aforesaid, and to return the bonds, &c.

4. "That notwithstanding a large amount of bonds, money and securities, to wit: two millions of dollars in bonds, had come into the hands of said William Sloan, a large portion of which bonds, moneys and securities were, on the second day of March, still in the hands of him the said William Sloan, on the second day of March, in the year last aforesaid, unlawfully and wilfully refused, neglected and failed to return to the Public Treasurer," &c.

It will be seen that the indictment does not expressly aver

that the accused was President of a Railroad in which the State was interested, and that the statute only embraces Presidents of such railroads as the State had an interest in.

. The learned counsel for the State, however, contend that, inasmuch as the act incorporating the Wilmington, Charlotte and Rutherford Railroad Company is a public act, and the act Ch. 20, acts 1868–'69, ratified the 29th January, 1869, under which the State gave a certain amount of its bonds to that company in exchange for shares of its stock, is also a public act, of which the Court is bound to take cognizance, the Court must know that the State had an interest in that road. And inasmuch as the indictment avers, that the accused was President of the Wilmington, Charlotte and Rutherford Railroad Company, the Court must know that he was President of a railroad in which the State had an interest, and the averment, that he was President of the Wilmington, Charlotte and Rutherford Railroad Company, was equivalent to a direct and express averment that he was President of a railroad in which the State had an interest.

We concede that the acts referred to are public acts, of which the Court takes judicial cognizance, and that the Court knows that the State is interested in a company called the Wilmington Charlotte and Rutherford Railroad Company. But notwithwithstanding this, it does not appear from the indictment, and the Court cannot know, that the accused is President of that identical Wilmington, Charlotte and Rutherford Railroad Company in which the State is interested. Mere similarity of name is not equivalent to an averment of identity. For aught that appears he may be President of some other company of the same name, but in which the State is not interested. No one contends that an indictment must be "certain to a certain intent in every particular," that would require it to anticipate and exclude every possible defence of the accused. But it is undisputed law, that when a statute enacts that any one of a certain class of persons, who shall do or omit a certain act

under certain circumstances, shall be guilty of a crime; the indictment must describe the person indicted as one of that class, and aver that he did or omitted the act under the circumstances which make it a crime. Every one of these things is an essential constituent of the crime.

In this case, the act makes it a crime, in a President of a railroad in which the State is interested, to fail to do a certain thing, and it is not charged that the accused was President of such a road. Clearly no crime is charged.

2. That Section 1, of the act of 1869–'70, imposes only on the President, &c., of railroads, " who have received bonds or other securities of the State, &c., under an act of the General Assembly or ordinance of a Convention, passed since May, 1865," the duty to return such bonds to the Treasurer, &c. And this is not altered by section 3, which expressly refers to section 1.

Now, the indictment no where charges that the defendant had received bonds, &c., under an act, &c., passed since May, 1865. It only says " that notwithstanding a large amount of bonds, &c., had come into the hands of said W. S., &c., he refused, &c."

We think the indictment is clearly defective in this respect also. It does not aver that defendant ever received any of the bonds, &c., the failure to return which is made an offence; the bonds, which he had, may have been purchased by the company in the market, and not received under any act, &c.

The counsel also took a third exception, which it is unnecessary to consider.

We concur with the Judge below that the indictment should be quashed.

PER CURIAM.                              Judgment affirmed.