STATE v. ZIP WILKERSON.

(Filed 5 November, 1913.)

1. Spirituous Liquor — Unlawful Sale — Possession — Prima Facie Case—Burden of Proof—Interpretation of Statutes.

Chapter 44, Laws 1913, making it unlawful, with certain exceptions, for any person, etc., to keep in his possession for the purpose of sale, spirituous liquors, etc., enacting that the possession of more than one gallon thereof shall constitute *prima facie* evidence of the violation of the statute, does not relieve the State from the burden of the issue and of proving that the one

in whose possession more than one gallon of whiskey was found, under its "search and seizure" provision, and who was indicted and tried under this statute, was guilty of the violation of the law, beyond a reasonable doubt, and while the *prima facie* case, unexplained, is sufficient to sustain a verdict of guilty, yet the defendant is not required to show, by the greater weight of the evidence, that the whiskey was in his possession for lawful purposes, for such, in effect, would require him to establish his own innocence, and relieve the State of the burden of the issue, which is placed upon it.

2. **Spirituous Liquor—Burden of Proof—Prima Facie Case—Instructions, Conflicting—Trials.**

Where a defendant is tried for the violation of the prohibition laws of this State, under chapter 44, Laws 1913, making the possession of more than one gallon of spirituous liquor *prima facie* evidence of its violation, an erroneous instruction which placed upon him the burden of showing that he did not have the spirituous liquor for an unlawful purpose, is not cured by also placing the burden upon the State to show that he was guilty of the offense charged beyond a reasonable doubt.

3. **Spirituous Liquor—Unlawful Sale—Principal and Agent—Trials —Questions for Jury—Interpretation of Statutes.**

It is not in violation of our prohibition law for one to receive here money from another as his agent and go to another State by private conveyance or otherwise, and purchase spirituous liquor there, and deliver it here, when his act as agent is *bona fide* (Revisal, sec. 3534) ; and he is entitled to receive a reasonable compensation, at least, for the services thus rendered, but not as any part of the purchase price, the intent and the true nature of the transaction, in proper instances, being questions for the jury under instructions from the court on the law applicable.

4. **Same—Instructions.**

Upon a trial for a violation of our prohibition law, there was evidence tending to show that the defendant was found in possession of eleven gallons of whiskey, which possession, under chapter 44, Laws 1913, was made *prima facie* evidence of an intent to unlawfully sell the same or of keeping it for sale, contrary to the statute. There was evidence in behalf of the defendant that he had received from each of ten customers at his store the price for one gallon of whiskey, for which he agreed to go to Virginia and make the purchase as their agent, charg-

S. v. WILKERSON.

ing 25 cents a gallon for his services as such. He was re-
turning from his trip with eleven gallons of whiskey, having
purchased one gallon for his own use, when he was seized and
searched and the whiskey was found· in his possession: *Held*,
it was reversible error for the court to instruct the jury that
the defendant must show *by the preponderance of the evidence*
that he was acting *bona fide* as the agent for others, as testified,
in order to acquit him.

5. Spirituous Liquor—Offense Charged—Conviction—Constitutional
   Law.

   Where one is indicted for the sale of spirituous liquor, and
   tried under chapter 44, Laws 1913, making possession of a cer-
   tain quantity *prima facie* evidence of a guilty purpose in having
   it, he may not be convicted under the provisions of chapter 133,
   Laws 1911, known as the "Club Act," for it would be a violation
   of his constitutional rights to charge him with the commission
   of one crime and convict him of a different one.

6. Criminal Law—Burden of Proof—Directing Verdict.

   The burden of proof being on the State to show that a defend-
   ant committed the criminal offense with which he stands charged,
   it is error for the court, under any circumstances, to direct a
   verdict of guilty.

ALLEN, J., concurring; CLARK, C. J., dissenting.

APPEAL by defendant from *Cline, J.,* at October Term, 1913,
of VANCE.

The defendant was arrested upon a warrant issued by the
recorder of Vance County, and based upon the following affi-
davit of M. N. Parrish:

M. N. Parrish, being duly sworn, complains and says that at
and in said county on or about 28 April, 1913, Zip Wilkerson
did unlawfully and willfully have in his possession 11½ gallons
of whiskey for sale, contrary to the statute in such case made
and provided, and against the peace and dignity of the State.

                    (Signed)    M. N. PARRISH.

He was tried before the recorder, convicted, and appealed to
the Superior Court. The evidence at his trial in the latter court
tended to show that defendant had been employed by. ten men
near Henderson in Vance County, who were customers at his

store, to go to Virginia and buy for them 10 gallons of whiskey, 1 gallon for each man. He agreed to do so if they would pay him $2.50 for the service. Each of them gave him $2 to pay for the whiskey, and 25 cents for buying and hauling it. He hauled for the public, and kept a horse and buggy and also a wagon for the purpose. He went to Virginia in his buggy, bought the liquor there with the money, and was hauling it back for delivery to them, when, on the way to his home, he was arrested by the officer, with the whiskey in his possession. He bought a gallon for himself, and had in his wagon, at the time of the arrest, 11 gallons of corn liquor in three kegs and two bottles. The gallon which he bought for himself was for his personal use and not for sale, nor did he know that any of the other persons for whom he bought the liquor intended to sell it or any of it. He received only 25 cents from each man for buying and hauling it.

Upon this evidence, which in the main was the testimony of the defendant himself, at least the material parts of it, the court charged the jury that if they found, beyond a reasonable doubt, the defendant had in his possession more than one gallon of spirituous liquor at the time of his arrest, and he was not a druggist and had no medical depository, the law made it *prima facie* evidence of the violation of the act passed by the General Assembly in 1913, known as the "Search and Seizure Law"; that is to say, if those facts had been proven to them beyond a reasonable doubt, that statute puts upon the defendant the duty of going forward and satisfying the jury by the greater weight of the evidence that, in fact, he did not have the liquor in his possession for the purpose of sale, and, further, that if he bought the liquor as above set forth, and it was taken while in his possession before the bulk was broken or there had been any distribution among the men for whom he bought it, then, as matter of law, he was guilty of violating the act of 3 March, 1913, known as the "Search and Seizure Law," and they should convict; but if they had a reasonable doubt about it, they should acquit. The jury returned a verdict of guilty. Judgment was entered thereon, and defendant appealed.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*Henry T. Powell and T. M. Pittman for defendant.*

WALKER, J., after stating the case: The defendant was
charged with a violation of the act of 1913, it being chapter 44,
entitled "An act to secure the enforcement of the laws against
the sale and manuffacture of intoxicating liquors," ratified
3 March, 1913. The act makes it unlawful for any person,
firm, association, or corporation, other than druggists or medical depositories, duly licensed, "to have or keep in his, their, or
its possession, for the purpose of sale, any spirituous, vinous, or
malt liquors," and makes proof of any one of certain facts
*prima facie* evidence of the violation of the act; and, among
others, it is provided that "the possession of more than one gallon of spirituous liquors at any one time, whether in one or
more places," shall constitute such *prima facie* evidence of the
fact that it is kept for sale in violation of the act.

Having clearly before us the nature of the particular charge
against the defendant, the law alleged to have been violated and
the proof offered in support of the charge, we are prepared now
to consider the objection urged by the defendant's counsel to
the charge of the court.

The jury were instructed that the fact of his having in his
possession more than one gallon of the liquor made out a *prima
facie* case against the defendant. If the court had stopped here,
and not qualified this instruction, it would have been correct;
but it did not do so, but went beyond the terms of the statute
and the law when it further charged that it *then* was the duty
of the defendant "to go forward and satisfy the jury, by the
greater weight of the evidence, that he did not have the liquor
in his possession for the purpose of sale." In this further
instruction we think there was error. The defendant, as we
have shown, is charged, under the act of 1913, with unlawfully
having spirituous liquor in his possession for the purpose of
selling it, and nothing else, and proof of the possession of more
than one gallon of such liquor is made *prima facie* evidence of

the unlawful act, which is, that it is held by him for the pur-
pose of sale, an act forbidden by the general law. It is not
made unlawful for a person to have more than one gallon of
spirituous liquor in his possession, but it is criminal to have
possession of that quantity for the purpose of sale, and while
the bare possession of so much may, in itself and as a fact, be
innocent, it is yet made *prima facie* evidence of guilt under the
statute, as in *S. v. Barrett,* 138 N. C., 630. But it is only evi-
dence, and while it has the added force or weight of being *prima
facie,* the latter means no more than that it is sufficient for the
jury to convict upon it, alone and unsupported, if no other
proof is offered; but upon the whole evidence, whether consist-
ing of the mere fact of possession or of additional facts, the
jury are not bound to convict, but simply may do so if they
find, beyond a reasonable doubt, or are fully satisfied that the
defendant is guilty. *Prima facie* means at first; on the first
appearance; on the face of it; so far as can be judged by the
first disclosure; presumably. These are the definitions of the
law, as we learn from the books. Black's Dict. (1 Ed.), 539.

The jury are no more required to convict upon a *prima facie*
case than they are to acquit because of the presumption of inno-
cence. They must judge themselves as to the force of the testi-
mony and its sufficiency to produce in their minds a conviction
of guilt. In civil cases the rule is the same (with a difference
in the quantum), as *prima facie* evidence only carries the case
to the jury, and does not entitle the party in whose favor it has
been offered to a verdict as matter of right.

Referring to this rule, as applied to civil cases, and the pre-
sumption, or *prima facie* case, arising under the maxim, *res
ipsa loquitur,* which presents one of the strongest of such cases,
the Supreme Court of the United States has recently said: "In
our opinion, *res ipsa loquitur* means that the facts of the occur-
rence warrant the inference of negligence, not that they compel
such an inference; that they furnish circumstantial evidence of
negligence where direct evidence of it may be lacking; but it is
evidence to be weighed, not necessarily to be accepted as suffi-
cient; that they call for explanation or rebuttal, not necessarily

that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff. Such, we think, is the view generally taken of the matter in well considered judicial opinions." *Sweeney v. Erving,* 228 U. S., 233. The Court cites with approval the numerous cases decided by this Court on the same subject. *Womble v. Grocery Co.,* 135 N. C., 474; *Stewart v. Carpet Co.,* 138 N. C., 60; *Lyles v. Carbonating Co.,* 140 N. C., 25; *Ross v. Cotton Mills, ibid.,* 115; *Board of Education v. Makely,* 139 N. C., 31; *Overcash v. Electric Co.,* 144 N. C., 572; *Winslow v. Hardwood Co.,* 147 N. C., 275.

*Justice Hoke* says, for the Court, in *Furniture Co. v. Express Co.,* 144 N. C., at p. 644: "It may be well to note here that, in using the terms *prima facie* and presumptive, the terms do not import that the burden of the issue is changed, but that on the facts indicated the plaintiff is entitled to have his cause submitted to the jury under a proper charge as to its existence or nonexistence and the effect of any presumption which may attach, as indicated in the cases," citing several of the cases to which we have already referred.

It may, therefore, be taken as settled in this Court, at least, and we believe the same may be said of most, if not all, of the courts, that *prima facie* or presumptive evidence does not, of itself, establish the fact or facts upon which the verdict or judgment must rest, nor does it shift the burden of the issue, which always remains with him who holds the affirmative. It is no more than sufficient evidence to establish the vital facts without other proof, if it satisfies the jury. The other party may be required to offer some evidence in order to prevent an adverse verdict, or to take the chances of losing the issue if he does not, but it does not conclude him or forestall the verdict. He may offer evidence, if he chooses, or he may rely alone upon the facts raising the *prima facie* case against him, and he has the

right to have it all considered by the jury, they giving such weight to the presumptive evidence as they may think it should have under the circumstances.

The defendant is not required to take the laboring oar and to overcome the case of the plaintiff by a preponderance of evidence, is what we said in *Winslow v. Hardwood Co., supra,* and substantially the same thing was said in the other cases we have cited. This is undoubtedly the rule in civil cases, and it applies with greater force to criminal cases, where the defendant has the benefit of the doctrines of reasonable doubt and the presumption of innocence. How can we say that *prima facie* evidence, or that which is apparently sufficient, excludes all reasonable doubt of guilt, and by its own force overcomes the presumption of innocence? The bare statement of the proposition is sufficient to show its fallacy. It would destroy the presumption of innocence and take away the protection of the other rule as to reasonable doubt. The presumption of innocence attends the accused throughout the trial and has relation to every essential fact that must be established in order to prove his guilt beyond a reasonable doubt. *Kirby v. U. S.,* 174 U. S., 47. He is not required to show his innocence; the State must prove his guilt. No valid conviction can be had in law which is based solely upon *prima facie* evidence as conclusive and foreclosing the verdict, or which even casts upon the defendant the burden of showing his innocence by the greater weight of the evidence. We know of no such rule, and it finds no warrant in the language of the statute. The decisions are all the other way, when rightly interpreted. In a case very similar to this one, the Court held that the jury must consider all the circumstances, whether introduced by the State or the accused, in connection with the evidence proving the possession of the liquor, taking into account as well the presumption of the defendant's innocence. *S. v. Cunningham,* 25 Conn., 195.

But directly to the point, and one which exactly fits this case, is the case of *People v. Cannon,* 139 N. Y., 32, where the Court thus sets forth with great force and clearness the limitations upon the power of the Legislature to create such presumptions,

S. *v.* WILKERSON.

their extent and scope, and the rights of the defendant, not-withstanding them: "It cannot be disputed that the courts of this and other States are committed to the general principle that even in criminal prosecutions the Legislature may with some limitations enact that when certain facts have been proved, they shall be *prima facie* evidence of the existence of the main fact in question. (See cases cited in 103 N. Y., 143, *supra.*) The limitations are that the fact upon which the presumption is to rest must have some fair relation to, or natural connection with, the main fact. The inference of the existence of the main fact because of the existence of the fact actually proved must not be merely and purely arbitrary, or wholly unreasonable, unnatural, or extraordinary, and the accused must have in each case a fair opportunity to make his defense, and to submit the whole case to the jury, to be decided by it after it has weighed all the evidence and given such weight to the presumption as to it shall seem proper. A provision of this kind does not take away or impair the right of trial by jury. It does not in reality and finally change the burden of proof. The people must at all times sustain the burden of proving the guilt of the accused beyond a reasonable doubt. It, in substance, enacts that, certain facts being proved, the jury may regard them, if believed, as sufficient to convict, in the absence of explanation or contradiction. Even in that case the court could not legally direct a conviction. It cannot do so in any criminal case. That is solely for the jury, and it could have the right, after a survey of the whole case, to refuse to convict unless satisfied beyond a reasonable doubt of the guilt of the accused, even though the statutory *prima facie* evidence were uncontradicted. The case of *Commonwealth v. Williams* (6 Gray, 1) supports this view."

In *Board of Excise v. Merchant,* 103 N. Y., 143, the Court in dealing with this very question says that by the presumption or *prima facie* case arising by statute from possession of the liquor, "the burden of proof is not even really changed," and then adds that the case must be submitted to the jury, notwith-standing the presumption, upon the evidence, whatever it is,

"with the burden still resting upon the prosecution to establish the guilt," the offense in that case being an unlawful sale of liquor.

It is also stated as law in Black on Intoxicating Liquors that "the Legislature has undoubtedly a very extensive power in respect to fixing or modifying the rules of evidence to be applied by the courts. The exercise of this power, however, in relation to criminal proceedings, is subject to certain important limitations, among which are the following: (1) The Legislature, in enacting rules of evidence, must not usurp judicial functions; (2) such rules must not be of the nature of *ex post facto* laws, or illegally retroactive in their operation; (3) they must not deprive the accused of his constitutional right to be confronted with the witnesses against him; (4) the Legislature cannot compel a defendant to furnish evidence against himself; (5) nor deprive him of his right to a trial by jury; (6) it would be unlawful to make any given fact or state of facts *conclusive* evidence of guilt, in negation of the common-law presumption of innocence. The rules of evidence in prosecutions under the liquor laws have frequently been the subject of legislative attention, and the changes made have sometimes shown a wide departure from common-law principles. All such statutes—which for the most part are designed to facilitate convictions by admitting presumptive or indirect proof of certain facts—must be brought to the test of constitutional principles such as those above enumerated. If found to be in violation thereof, they are not defensible on any ground of public policy or the welfare of the community. As a rule, however, these acts have been so framed as to escape constitutional objection. Thus, a provision that, in prosecutions for the common selling of intoxicating liquors, delivery in or from any building or place other than a dwelling-house shall be deemed *prima facie* evidence of a sale, is constitutional and valid. This neither conclusively determines the guilt or innocence of the party who is accused nor withdraws from the jury the right and duty of passing upon and determining the issue to be tried. And the same is true of a statute providing that, whenever an unlawful sale of liquor is alleged, and

a delivery proved, it shall not be necessary to prove a payment, but such delivery shall be sufficient evidence of sale. So if a law enacts that where a person is seen to drink intoxicating liquor on the premises of one who has simply a license to sell liquor for consumption off the premises, it shall be *prima facie* evidence that the liquor was sold by the occupant of the premises with the intent that it should be drunk thereon."

This Court has fully sustained this principle and approved these authorities by citing and relying upon them in *S. v. Barrett,* 138 N. C., 630. It was held in *Barrett's case* that notwithstanding the statute expressly declares that the possession of more than a gallon of spirituous liquor shall be *prima facie* evidence of the purpose to sell it, it is, at last and in its essence, but evidence of guilt, and not conclusive or determinative of defendant's guilt even by itself and unexplained. It further holds that there is no shifting of the burden to the defendant, but it rests upon the State to establish the accusation of the bill of indictment beyond a reasonable doubt.

It will be observed that, in our case, the court placed the entire burden upon the defendant to show his innocence, for the instruction to which exception was taken is that the statute requires him to satisfy the jury by the greater weight of the evidence that in fact he did not have the liquor in his possession for the purpose of sale, whereas, according to all the authorities, and especially in *Barrett's case,* the burden is on the State throughout the trial. The defendant profited little or nothing by the subsequent charge that, if the jury had a reasonable doubt about the facts recited by the court, being those which the defendant must prove by the greater weight of the evidence, they should acquit. This, to say the least of it, was very confusing, if not contradictory. What advantage did he gain by the charge as to reasonable doubt, after the jury had been told that there was a presumption against him and he must "satisfy them by the greater weight of evidence" of his innocence? It deprived him of the presumption of innocence, and practically eliminated the benefit of the doctrine as to reasonable doubt by so weakening it that it amounted to nothing; and all of this

was done under a statute (act of 1913) which merely establishes a *prima facie* case for the State, sufficient, it is true, to carry the case to the jury, with the right to convict, but. leaving in full force the doctrine of reasonable doubt and also the presumption of innocence; for a man, even under our present laws, may have more than a gallon of liquor in his possession for a perfectly lawful and innocent purpose. It is not the possession that is unlawful, but the forbidden purpose for which it is held.

The Attorney-General admitted that there was error in the charge, under the decisions in *S. v. Barrett,* 138 N. C., 645; *S. v. McIntyre,* 139 N. C., 600; *S. v. Dowdy,* 145 N. C., 432; *S. v. Dunn,* 158 N. C., 654, and *S. v. Mostella,* 159 N. C., 461; but he argued that what defendant did and proposed to do with the liquor, in law, constituted a sale, by his own admission on the stand. We do not assent to this position. It was lawful to buy the liquor in Virginia, and if he made the purchase there, acting solely and in good faith as agent for the other persons, who sent him there for the purpose of buying it for them, he would not be guilty of selling liquor if he had delivered it. It was so decided in *S. v. Whisenant,* 149 N. C., 515, as we think, where it appeared that the defendant, as agent, had ordered some whiskey for the prosecuting witness, which was to be shipped from another State, where our laws did not operate, and when it arrived, he delivered it to the witness. It was held, if defendant acted *bona fide,* that he was not guilty, although he ordered the whiskey as agent and received the money for it; and it was further said to be a transaction of interstate commerce. Under either view, defendant could buy liquor for another, as his agent, if he acted in good faith and was not concealing, under the guise of an agency, a transaction which was in fact a sale. If liquor can thus be ordered through an agent from another State, without violating the law, if done *bona fide,* why cannot the agent go into that State in person and buy it, where it can be lawfully sold, and then transport and deliver it himself? An agent may also receive at least a fair compensation for his services, provided the money is paid to him strictly as such, and not as any part of the price for the liquor. His

intent and the true nature of the transaction were questions for the jury, under a proper charge from the court. *S. v. Allen,* 161 N. C., 226, supports this view directly, and the facts were much like those in this case. *S. v. Johnson,* 139 N. C., 641, is not in point, for there the jury found that the prosecuting witness, Brown, had paid the *price* of the liquor, which was fixed by the defendant beforehand. There was no agency. He was not buying for another, but selling to him.

Nor is the defendant indictable under Revisal, sec. 3534, as he procured the liquor in Virginia, where it was lawful to sell it. *S. v. Smith,* 117 N. C., 809; *S. v. Burchfield,* 149 N. C., 537. The case of *S. v. Smith,* just cited, seems to be decisive of the point here raised, and, we think, is fatal to the judge's charge. It is there held that it is no more unlawful to buy through one's agent than to buy directly himself, and the agent, when he buys lawfully, is just as innocent as his principal would be if he had bought himself, the real question being whether there was a *bona fide* agency or a sale in disguise. It is a question of intent, without regard to the fair appearance of the transaction. What is it, in fact or in substance and legal effect, is the question; and in this view, which is the true one, we are forcibly reminded of what *Justice Ruffin* observed in *S. v. Gilbert,* 87 N. C., 527, with regard to an indictment for carrying a concealed weapon. He said the offense of which the defendant is charged forms no exception to the general rule, that to constitute a crime there must be a criminal intent, and the Court perceived no good reason why it should be. "The law is a wholesome one, and its constant enforcement according to its true spirit and intention meets the desires and expectations of every well disposed and peaceable citizen; but some care should be used, lest by pushing its requirements too far it may result in a reaction of sentiment against it."

If it be said that defendant is guilty under Laws 1911, ch. 133, known as the "Club Act," it is quite enough to say that he was not indicted, nor was he convicted, under that law, and he has not had any opportunity to defend himself against any such charge. The Attorney-General concedes that he is charged only

with violating the act of 1913, and the judge below so expressly charged the jury. Besides, if the indictment had been framed upon the act of 1911, ch. 133, there is no fact made presumptive or *prima facie* evidence by it, and the charge would, if possible, be more erroneous than if confined to the act of 1913, as it should be. It may be, as argued by counsel, that upon the evidence in this case the jury would be warranted, under proper instructions, in convicting the defendant of the offense created by the act of 1911, ch. 133, if he had been charged with a violation of that act. We need not give any opinion on that question, it not being raised on this record, as there is no allegation upon which such a conviction could be based, and no reference whatever to the act. The allegations and proof must correspond. It would be contrary to all rules of procedure and violative of his constitutional right to charge him with the commission of one crime and convict him of another and very different one. He is entitled to be informed of the accusation against him and to be tried accordingly. *S. v. Ray,* 92 N. C., 810; *S. v. Sloan,* 67 N. C., 357; *S. v. Lewis,* 93 N. C., 581; Clark's Cr. Proc., 150.

We think that there is evidence sufficient to sustain a conviction upon the present indictment, but the jury must be so guided by the court as to find the facts essential to establish his guilt.

The question here is as to the *bona fides* of the defendant. Was he really acting solely in the capacity of agent when he purchased the liquor, or was that a mere pretense, under cover of which he was violating the law by selling liquor, or having it for sale? The case should have been submitted to the jury in this aspect, with the burden on the State to make out its case to their full satisfaction. If defendant was acting honestly and not deceptively, he had the right to buy liquor in Virginia, where it was lawful to sell to him, and to return to this State with it for the purpose of making delivery to the parties for whom he bought it, and if this was all, it would not constitute a sale of the liquor or the possession of it with the unlawful purpose to sell, within the meaning of the act of 1913. *S. v. Allen,* 161 N. C., 226. The possession of the liquor, though, would carry the case to the jury.

The rule as to the legal effect or significance of *prima facie* evidence has long prevailed in this and other courts, and we are not aware of any decision of this Court which has stated it or has applied it otherwise than is done in this case.

There was error in the charge of the court in the respect pointed out, for which another trial is ordered.

New trial.

ALLEN, J., concurring: I believe in the enforcement of the prohibition law, as I do in the enforcement of all law; but I cannot agree to convict of one offense when the defendant is charged with another, because intoxicating liquors are the subject of investigation.

The Search and Seizure Law (ch. 44, Laws 1913, sec. 2) says: "It shall be unlawful for any person to have or keep in his possession, for the purpose of sale, any spirituous, vinous, or malt liquors."

The charge in the warrant is that the defendant "did unlawfully and willfully have in his possession 11½ gallons of whiskey for sale."

The warrant follows the language of the statute, and there can be no doubt that the defendant was charged with a violation of the act of 1913. But if there is any doubt about the charge against the defendant, there is none as to how he was tried, because the presiding judge, in his charge to the jury, said: "Gentlemen of the jury: The defendant, Zip Wilkerson, is indicted here, charged with the violation of an act passed by the General Assembly in 1913, known as the Search and Seizure Law. He is charged in the bill as having in his possession for the purpose of sale more than one gallon of liquor."

He then charged the jury as to the effect under the act of 1913 of the *prima facie* case made by the possession of more than one gallon of intoxicating liquors; and of this charge the Attorney-General, who prosecutes in behalf of the State, says in his brief: "Under the decisions of this Court, there was error in this instruction. *S. v. Barrett,* 138 N. C., 645; *S. v. McIntyre,* 139 N. C., 600; *S. v. Dowdy,* 145 N. C., 432; *S. v. Dunn,* 158 N. C., 654; *S. v. Mostella,* 159 N. C., 461."

All of these cases, cited by the Attorney-General to show that the charge of his Honor was erroneous, were concurred in by the *Chief Justice.*

It is certain, therefore, if the rule upon which the opinion of the Court rests was adopted in an ill-advised moment to accord with a highly technical conception of the doctrine laid down by a text-writer, and is a mere metaphysical proposition, it has been reiterated time and again, with the consent of all the members of the Court; and as it has been used at least twice (*S. v. Barrett, S. v. Dowdy*) for the conviction of those charged with violating the prohibition law, it is hardly fair or legal to change it now to enable the State to convict under one statute, when the defendant is charged under another.

The defendant has not been charged with an offense under the Club Act of 1911, nor has he been tried under that act, and there is no contention that he was tried according to law, as heretofore declared by this Court, under the Search and Seizure Law of 1913.

It should be kept in mind that neither life, nor limb, nor liberty, nor property, has any security or abiding place except by adhering to the Constitution, and that it provides that, "In all criminal proceedings every man has the right to be informed of the accusation against him"; that "No man shall be put to answer any criminal charge, except as hereinafter allowed, but by indictment," etc.; that "No man ought to be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land"; and that if a citizen can be tried in the Superior Court before a jury, and when he has been tried illegally, can be convicted here, without a jury, of another and different charge, the safeguards of the Constitution amount to nothing.

CLARK, C. J., dissenting: The warrant in this case charges that the defendant "did unlawfully and willfully have in his possession 11½ gallons whiskey for sale." There is no reference to any particular statute.

Upon the defendant's own evidence, he had in possession 11 gallons of whiskey, for which he had been paid in advance, and which in return for the money he was to divide out among ten men. Upon this, the judge should have simply told the jury that if they believed the defendant's testimony, he was guilty. Anything that the judge said other than this was simply surplusage, harmless and immaterial, for upon the defendant's own testimony the verdict of guilty was correct, and should be sustained.

We can pass by, for the present, the exception to the judge's charge on the effect of a *prima facie* case. If the instruction was erroneous, it was harmless, for upon the defendant's own showing the judge should have charged the jury to find him guilty. On the stand, the defendant testified that he had in his possession 11 gallons of whiskey in three kegs; that for a fee of $2.50 he went to Virginia and bought this whiskey in bulk; that he brought it back to North Carolina and was going to divide and deliver it to the ten men who had "chipped in" $2.50 each to buy it with, when he was arrested. The possession of the whiskey and his purpose in having it are thus admitted.

*S. v. Johnson,* 139 N. C., 641, is *exactly in point.* There Johnson agreed to go from Charlotte to Salisbury and get half a gallon of whiskey, bring it back to Charlotte and deliver it to Brown, who before he left Charlotte paid him $1, the purchase price of whiskey. *Brown, J.,* said: "We think the facts set out in the special verdict disclose an agreement or contract to deliver to Tom Brown half a gallon of whiskey, entered into in the city of Charlotte on 15 July by the defendant, and a receipt of the agreed price; also a delivery of the whiskey next morning, in pursuance of the agreement. These facts constitute a sale of liquor upon the part of the defendant within the prohibition territory."

*This is exactly the case here.* The defendant received the money from the other parties, to go to Virginia, where he got the whiskey in bulk and brought it back for the purpose of dividing it and delivering it to the several purchasers, according to contract. If, as the Court said in *S. v. Johnson, supra,*

"These facts constitute the sale of liquor" after the delivery, then unquestionably, having it in possession for such purpose is having it "in possession for sale."

The question, therefore, taking defendant's testimony as true, is, when a number of persons have raised a fund and put it in the hands of an agent to buy whiskey, and he has such whiskey in his possession, to be afterwards divided out by him to them in proportion to the money that each had paid in, whether this is having it in possession for an illegal purpose.

The identical question was raised in *S. v. Colonial Club*, 154 N. C., 177, and the Court there held by a vote of three to two that this did not constitute "having liquor in possession for the purpose of sale." The Legislature at the first ensuing session enacted (Laws 1911, ch. 133) that such a condition should constitute having liquor in possession for an illegal purpose, and a misdemeanor. That is conclusive of this case.

Chapter 133, Laws 1911, provides as follows (leaving out the verbiage which is not pertinent to this defendant): "Any corporation, club, association, person or persons that shall directly or indirectly . . . in any manner aid in keeping . . . a clubroom *or other place* [here a buggy] where intoxicating liquors are received, *kept,* or stored, for barter, sale, exchange, *distribution or division,* among the members of any such club or association or aggregation of persons by any means whatever, or that shall act as *agents* in *ordering, procuring, buying,* storing, or keeping intoxicating liquors for any such purpose, shall be guilty of a misdemeanor." Upon the defendant's evidence, he was an agent in procuring intoxicating liquor for sale or division among the aggregation of persons who furnished him the money for that purpose. He was therefore guilty of a misdemeanor under said chapter. He had, in the language of the warrant, "unlawfully and willfully in his possession 11 gallons of whiskey," and was guilty of a misdemeanor under that chapter. It was mere surplusage to charge further that he had it for sale.

It is true that the title of the act is "To prohibit the sale or *handling* of intoxicating liquors by clubs or *associations."* But

the body of the act, as above stated, is broader, and makes it a misdemeanor for any agent to procure intoxicating liquor for distribution or division among the members of any aggregation of persons.

There is no question of interstate commerce involved, as in *S. v. Whisenant,* 149 N. C., 515 (if indeed the latter case is law since the passage of the Webb-Kenyon Act). The whiskey was not ordered from a Virginia house. When the whiskey was delivered to the defendant in Virginia he received the full title to the property. Under his contract made in North Carolina and to be performed in North Carolina, he took the whiskey home with him, and it was found in his possession in this State, and he admitted that he had it for the purpose of division among the ten men who had paid him the money, which act was to be done here. It makes no difference that they paid him in advance. The sale was not completed until a division among the aggregation of persons for whom he had bought the whiskey. No one of them had any title or ownership in the whiskey till such partition should be made, and he had it in possession for the unlawful purpose of a sale by means of such division.

There could be but one inference from the evidence, and the judge might well have charged the jury that if they believed the evidence to return a verdict of guilty. *S. v. R. R.,* 149 N. C., 508.

In *S. v. Herring,* 145 N. C., 418, the Court held (*Hoke, J.*) that taking orders and procuring whiskey to be thereafter delivered to the parties who had furnished the agent with the money for such purchase made the defendant guilty of a sale if the whiskey was delivered. It follows that if the whiskey is intercepted before the division and delivery, such agent is guilty of "having it in possession for sale."

In *S. v. Burchfield,* 149 N. C., the Court held (*Walker, J.*) that under Revisal, 3534, it was a misdemeanor for any one "to procure for or deliver spirituous liquors to another, and that such agent was punishable even though he had no interest in the sale other than as agent of the purchaser, and that his acting solely as agent for the buyer was no defense."

164—29

It follows that upon the defendant's own testimony he was guilty of a misdemeanor, both under Revisal, 3534, and Laws 1911, ch. 133.

It is therefore unnecessary to review the charge of the court as to the effect of *prima facie* evidence. It is certain that the judge's charge was correct under the uniform rulings of this Court until a very recent period, when the Court, in what may be well termed an ill-advised moment, changed its former clear ruling to accord with a highly technical conception of the doctrine laid down by a text-writer. It may well be doubted if any jury has ever been impaneled in North Carolina which would be affected by the difference in the formula, whether that formerly in use or that which is now considered more correct is used. In this day, when the American Bar Association and the demands of a practical age, and indeed the opinion of all the leading courts, are in favor of abolishing useless distinctions which can be of no use in the better administration of justice, it is unfortunate that stress should be laid upon this. It would be well to return to the older and more logical formula, or at least to hold that the variance is immaterial, for the difference can never be understood or appreciated by a jury, whose object should be simply to ascertain the real facts of the controversy submitted to them.

But whatever may be said in favor of the change which has been made, the failure to use it was absolutely immaterial in this case, for upon the defendant's own testimony he is guilty of a misdemeanor embraced within the terms of the warrant, "the unlawful possession of the 11 gallons of whiskey." The defendant testified that he had it in possession, undivided, for the purpose of division and distribution. The judge charged the jury that they must find beyond a reasonable doubt the facts, which he recited and which under the statute would "constitute *prima facie* evidence," and added that "if they found those facts beyond a reasonable doubt, then the duty was on the defendant to go forward and satisfy the jury by the greater weight of the evidence that he did not have such liquor in his possession for the purpose of sale." This was the long recognized and logical

S. v. WILKERSON.

method of expressing to the jury the legislative meaning of a *prima facie* case. There is no logical ground to contest its correctness. It can only be criticised on highly metaphysical grounds.

There is nothing in the Constitution which consecrates this or any other technicality or formula. The repetition of an error which has been found injurious or unnecessary does not make it any less harmful. *Hoke v. Henderson*, 15 N. C., 1, had been repeated countless times and endured for seventy years. But it was founded in error, and, like all other errors, was fated to pass away. *Mial v. Ellington*, 134 N. C., 131. The same is true of many other decisions which have been reversed. Most technicalities that prove harmful are abolished by legislation, because the courts are very slow in reforms of this kind. In the present case the formula used by the judge below is in accordance with that which was recognized throughout this State till a very short time ago, and no harm, but great good, would follow a return to our former rulings on that subject. The public policy of a State is expressed by the lawmaking power, and the sole object of the courts should be to construe and execute the law in the spirit in which it was enacted. The only way to enforce the law is to enforce it, and in its integrity.

In this State the defendant made the contract to furnish ten men with whiskey; in this State they paid him the money for it; in this State he had the whiskey ready to divide and deliver to them. Is there no law yet that makes possession of whiskey under these circumstances "unlawful and willful," as charged in this warrant?

To small avail is the act of the General Assembly of 1908 and its approval on a referendum, and to small avail are the acts of Congress and the subsequent acts, both State and Federal, curing all defects discovered by the courts, if this transaction can escape the condemnation of the law. There was one who said he could "drive a coach and six through any act of Parliament." It seems that legislators and Congressmen are still unable to use language effectively to express their meaning when that language is subjected to the critical eyes of courts.