"The jurors for the State upon their oath present that J. L. (228) Allen, late of the county of Wake, on 15 May, in the year of our Lord 1912, with force and arms, at and in the county aforesaid, did unlawfully and willfully sell for gain one-half gallon intoxicating liquor (corn whiskey) to B. M. Green, he, the said J. L. Allen, not then and there having a license to sell intoxicating liquor, against the form of the statute in such case made and provided and against the peace and dignity of the State. And the jurors for the State, upon their oath, do further present: that said J. L. Allen, of the county and State aforesaid, on 15 May, in the year of our Lord 1912, with force and arms at and in the county aforesaid, did unlawfully and willfully, for himself and as agent for persons, firms, and corporations, whose names are to the jurors unknown, solicit orders and proposals of purchase by the jug and bottle of intoxicating liquors of and from one B. M. Green, and other persons whose names are to the jurors unknown, against the form of the statute in such case made and provided, against the peace and dignity of the State."
The jury rendered the following special verdict: "The defendant J. L. Allen resides at Wake Forest, in said county, and has been for many years the agent of the Seaboard road and of the Southern Express Company at that place. On 17 June, 1912, between 2 and 3 o'clock in the evening, one B. M. Green applied to the defendant at Wake Forest to have shipped to him a half-gallon of corn whiskey, from Petersburg, in the State of Virginia, the cost of the whiskey being $1.05. The defendant Allen at Wake Forest received the money, $1.05, and sent it to the said firm in Petersburg, State of Virginia. The defendant did not know the price of the whiskey, but left it to the firm in Petersburg, Va., to send such corn whiskey as they could for the money inclosed. That the said money was sent by mail that evening, leaving Wake Forest about 5:45 p. m., 17 June, 1912, and the whiskey came by express over the Seaboard Air Line Railway the next day, reaching Wake Forest between 3 and 4 o'clock p. m. That the said half-gallon of corn whiskey came *Page 186 
along with whiskey shipped to other parties, to whom it was addressed, and bore the name of B. M. Green on the package. That about 4:30 (229) o'clock on the evening of 18 June, 1912, the said Green came to the express office and asked for his whiskey. The defendant Allen handed him the original package of whiskey, upon which was written the name B. M. Green. That the said whiskey came along with other packages addressed to other persons, and also bearing the name of B. M. Green, in order to save the express charges. That the said Allen had previous to this, on a number of occasions, sent money for whiskey for various persons, at their request, to different firm at Petersburg, Richmond, and Norfolk, in the State of Virginia. That the said Allen was not the agent of any of the said firms, and has no interest whatever in the transaction, but his purpose was merely to accommodate the said persons, and he received nothing whatsoever from the said persons or the said firms as compensation in these transactions. That he, the said Allen, did not solicit orders for whiskey from any person or persons, and did not order any whiskey for any minor or any of the students at Wake Forest; that he did order for everybody else who applied to him. That the said defendant Allen's compensation as express agent at Wake Forest was 10 per cent on the net receipts at that point, on all business of every character done at Wake Forest, and he received no other compensation from the said express company other than the 10 per cent upon the said receipts from all sources on the said express company's earnings at Wake Forest. That the shipments of whiskey to Wake Forest by express was increased only in proportion to the increase of other express freight within the last few years. That there is a large quantity of whiskey shipped by freight, and also by express, other than that shipped to the persons aforesaid. That the said whiskey is shipped to Wake Forest addressed to persons living at various distances from Wake Forest and in other townships and counties. It is shipped in such quantities to Wake Forest because of the fact that the persons doing their trading at Wake Forest find it more convenient for them to have it shipped there. That the said whiskey was in the original package in which it was shipped, and was sealed up when received and was delivered to the said Green in the same condition in which it was received, (230) and was not at any time intermingled with other property in the said State. That since the first of the year 1912 shipments by express have averaged about $60 per month, shipped in the manner aforesaid from the points aforesaid in the State of Virginia, on account of the money sent as aforesaid in the manner aforesaid by the defendant, and for the month of June, 1912, the amount may have reached $100. The jury for their special verdict say: *Page 187 
"We find the foregoing facts; and if on the said facts the court is of opinion that the defendant is guilty, then we find the defendant guilty as charged in the bill; and if the court is of the opinion that the defendant is not guilty upon such findings, then we find the defendant not guilty."
Upon the foregoing special verdict the court is of the opinion that the defendant is not guilty. And thereupon the jury for their verdict say that the defendant, the said J. L. Allen, is not guilty.
Motion for new trial and to set aside verdict overruled, and State excepted. From judgment discharging defendant, State again excepted and appealed.
The defendant was tried on a bill of indictment containing two counts: (1) an unlawful sale of whiskey to one B. M. Green "at or in said county"; (2) that he "unlawfully, for himself and as agent for persons, firms, and corporations whose names are to the jurors unknown, did solicit orders and proposals to purchase by the jug and bottle of intoxicating liquors from one B. M. Green and other persons whose names are to the jurors unknown," etc.
The second count in the bill, if it be considered as embodying a criminal accusation, can only amount to a charge of attempting to effect an unlawful sale to B. M. Green or other persons to the jurors unknown, by unlawfully, for himself and as agent for persons, firms, and corporations, soliciting orders for whiskey.
Apart from any legal considerations which might arise as to the substance of this charge, the prosecution must fail here, for the very sufficient reason that the basic facts upon which it is made to (231) rest are expressly repudiated by the special findings of the jury, as follows: "That the said Allen was not the agent of any of the said firms, and has no interest whatsoever in the transaction, but his purpose was merely to accommodate the said persons, and he received nothing whatsoever from the said persons or the said firms as compensation in these transactions. That he, the said Allen, did not solicit orders for whiskey
from any person or persons, and did not order any whiskey for any minor or any of the students at Wake Forest; that he did order for everybody else who applied to him."
The question then recurs as to the guilt or innocence of defendant under the first count in the bill, that of making an unlawful sale to B. M. Green at or in said county, etc. On this charge, the special *Page 188 
verdict, by correct interpretation, finds that defendant, who was depot and express agent at Wake Forest, N.C. at the request of B. M. Green, received from him $1.05 and sent same with an order for whiskey for said Green to that amount to a firm in Petersburg, Va. That the whiskey came the next day by express over Seaboard Railroad in a package containing half-gallon corn whiskey, addressed to said Green, and was delivered to him as purchaser. That defendant received no profit for the transaction and acted throughout as agent of the buyer and for his accommodation.
There is a statute in North Carolina (Revisal, sec. 3534) which provides that "if any one shall unlawfully procure and deliver whiskey for another he shall be deemed in law the agent of the vendor and be guilty of a misdemeanor." Interpreting the act in S. v. Burchfield,149 N.C. 537, it was held that the same applied to the case of procuring whiskey by purchase from an illicit dealer in prohibited territory and delivering it to another, Associate Justice Walker in the opinion saying: "The meaning of the section is not very aptly expressed, but the Legislature has sufficiently declared the intention to make it criminal for any person to procure liquor from an illicit dealer by purchase and deliver to another when both the purchase and delivery are made in a place where the sale of liquor is prohibited by law." And in another (232) case, at the same term, S. v. Whisenant, 149 N.C. 515, referring to this and other sections of the prohibition statutes, it was held:
1. Revisal, sec. 3534, making it criminal for one to procure whiskey for another by reason of an unlawful sale, has no application when the sale is not illegal or when our State legislation on the subject cannot apply to and affect the transaction by reason of the commerce clause in the Federal Constitution.
2. When one acts entirely as the agent of the buyer in ordering whiskey to be sent from another State, and has no interest in the whiskey, and has no part in the sale as vendor, or his agent or employee, he is not indictable under Revisal, 3534.
3. A sale of whiskey consummated in another State by order of one as agent for the buyer, sent from a place in the State where the sale is prohibited, is not indictable under the commerce clause of the Federal Constitution, and State legislation cannot affect the transaction, in respect to its criminality, until and after there had been a delivery within the State.
In that case the facts were, as ascertained and acted on by the jury, that the posecuting [prosecuting] witness had given defendant the money and requested him to make an order for some whiskey with one that defendant was sending for himself to a wholesale grocery house at Knoxville, Tenn. *Page 189 
The money and order were sent as requested and the whiskey delivered to the witness as in its receipt by defendant. In our opinion, this authority is decisive and fully supports the ruling of his Honor on the facts as presented in the special verdict.
It was contended for the State that the commerce clause of the Federal Constitution should not afford protection in this case, for the reason that there were other parcels of whiskey for other persons in the same general package which contained that for Green, and that defendant made himself guilty in delivering the different parcels to the parties, Green among others, to whom they were respectively addressed. This position was presented and rejected by this Court in S. v. Trotman,142 N.C. 662, a ruling made in deference to a decision of the Supreme Court of the United States, the final arbiter on these questions, in Caldwell v. North Carolina, 187 U.S. p. 622, and in which it (233) was held: "An ordinance under which a license fee may be required from an agent of a nonresident portrait company, who receives from such company pictures and frames manufactured by it to fill orders previously obtained, and after breaking bulk and placing each picture in the frame designed for it, delivers them to the respective purchasers, is invalid as an attempt to interfere with and regulate interstate commerce. " The facts and the decision in the Trotman case referred to, appearing in the headnote as follows: "In an indictment for selling patent medicines, etc., without license, contrary to Revisal, secs. 5150-1, where the jury by a special verdict found that certain citizens of this State gave orders for the medicines on a drug company in another State, which were forwarded to, received, and accepted by the company in that State, and the goods shipped from that State to the defendant, the drug company's agent in this State; that each package was wrapped in a separate parcel with the name of the purchaser marked thereon and then packed in one crate and shipped to defendant, who distributed same in the original form to the purchaser:Held, that the defendant was not guilty, as he was at the time engaged in interstate commerce." The principle recognized and applied in these cases is in no wise affected by the Federal statute, sometimes called the Wilson Act, which provides: "That all fermented, distilled, or other intoxicating liquors or liquids transported into any State or territory or remaining therein for use, consumption, sale, or storage therein, shall upon arrival in such State or territory be subject to the operation and effect of the laws of such State or territory enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such State or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." *Page 190 
Chapter 728, 26 Statute L., 313, 3 Fed. Statutes, Annotated, p. 853. That legislation was enacted to minimize or remove the effects of a decision of the Supreme Court of the United States theretofore recently rendered(Leisy v. Harden, 135 U.S. 100) to the effect that, under the commerce clause of the Federal Constitution, a vendor could not only (234) import whiskey from one State to another, notwithstanding the prohibition laws of the latter State, but could sell it there in the original package. The statute has been declared a constitutional enactment, with the limitation that it does not operate to restrain or affect a continuous shipment of whiskey from a vendor in one State to a vendee in another and there delivered to such vendee in the original package, this being the case now presented for consideration. Wilkinson v. Rharer,140 U.S. 345; Rhodes v. Iowa, 170 U.S. 413.
We were referred also to the North Carolina statute, Revisal, sec. 2080, by which in the case of intoxicating liquors the place of delivery is made the place of sale. The validity of this statute has been approved by this Court as to sales within the State. S. v. Herring, 145 N.C. 418; S. v.Patterson, 134 N.C. 612. But this statute may not be held to apply to a sale fully consummated in another State and where the subject-matter of the transaction is properly regarded as interstate commerce, and, as such, protected from interfering State regulations. On the facts, this sale was consummated in the State of Virginia, and the shipment, as we have just shown, must be considered and dealt with as interstate commerce till delivery in the original package to the purchaser. Caldwell v. State,supra; S. v. Trotman, supra; Rhodes v. Iowa, supra.
It was further urged for the State that, while the facts referred to might, when standing alone, have the effect of exculpating defendant, there are other facts embodied in the special verdict tending to establish that defendant was engaged generally in the unlawful business of procuring whiskey for others in prohibited territory, and this sale to Green should be held criminal as an instance and incident of the general unlawful business especially under the finding which says, "That he did not solicit orders from any one nor order for any minor or any student of Wake Forest College, but did order for everybody else who applied to him." This position assumes the very question which is in debate, and proceeds upon a theory not contained in either count of the bill of indictment and which could not be made the basis of a valid indictment. A citizen cannot be successfully prosecuted under a charge of (235) generally in the unlawful business of selling whiskey. For various and altogether sufficient reasons, in a charge of that character, there must be allegation and proof of specific conduct constituting a breach of the criminal law. S. v. Tisdale, 145 N.C. 422. *Page 191 
A requirement guaranteed by our Constitution and necessary in common fairness to enable a defendant to properly prepare his defense and to protect him from a second prosecution on the same state of facts. Accordingly, the bill of indictment, in this case, as stated, charges, on the first count, an unlawful sale to B. M. Green at and in Wake County; second, an unlawful attempt to make such a sale by soliciting purchases, on his part, in behalf of persons, firms, and corporations, to jurors unknown.
Unless guilty by reason of the conduct referred to and described in one or the other of these counts, there has been no crime against him either charged or proved, and for the reasons stated neither charge can be successfully maintained on the facts established by the verdict.
No error.
Cited: S. v. Wilkerson, 164 N.C. 443; S. v. Cardwell, 166 N.C. 312,313.