STATE v. JAMES WHISENANT.

(Filed 9 December, 1908).

1. **Intoxicating Liquors—Unlawful Sale—Procuring for Another.**

   Revisal, sec. 3534, making it criminal for one to procure whiskey for another by reason of an unlawful sale, has no application when the sale is not illegal, or when our State legislation on the subject cannot apply to and affect the transaction by reason of the commerce clause in the Federal Constitution.

2. **Same—Agent of Buyer.**

   When one acts entirely as agent of the buyer in ordering whiskey to be sent from another State, and has no interest in the whiskey, and has no part in the sale as vendor, or his agent or employee, he is not indictable under Revisal, sec. 3534.

3. **Same—Constitutional Law—Commerce Clause.**

   A sale of whiskey consummated in another State, by order of one as agent for the buyer sent from a place in the State where the sale is prohibited, is not indictable under the Commerce Clause of the Federal Constitution, and State legislation cannot affect the transaction, in respect to its criminality, until and after there had been a delivery within the State.

4. **Intoxicating Liquors—Unlawful Sale—Verdict, Interpretation of —Acquittal—Entry of Different Verdict.**

   Upon a trial under indictment for selling intoxicating cider and spirituous liquors, there was conflicting evidence as to the former, but the only evidence as to the latter was that defendant ordered one gallon of whiskey from K., beyond the State, for R., at the time he was ordering some for himself, without any interest in the sale as vendor, or vendor's agent or employee, but entirely as agent of the buyer. Without objection, the jury rendered a verdict to the Clerk, "Not guilty as to retailing cider or liquor, but guilty as to ordering one gallon of liquor for R." After the jury was discharged, the Court entered verdict of guilty: "Not guilty of selling liquor, other than the gallon ordered and delivered to R., as testified to by W." Held, (1) The sale at K. was not illegal, and not indictable; (2) It was error in the trial Judge to enter a verdict different from the one returned by the jury; (3) By reasonable intendment, the verdict of the jury was one of acquittal, excepting the order sent to K., beyond the State, and defendant should be discharged.

INDICTMENT for unlawfully selling spirituous liquors, etc., and intoxicating cider, to one Jim Ramsey, tried before *Ferguson, J.,* and a jury, August Term, 1908, of BURKE.

STATE *v.* WHISENANT.

Jim Ramsey, for the State, testified that he had bought such liquor, etc. There was dispute and contradictory testimony as to whether the cider sold was intoxicating. On cross-examination the witness denied having gotten defendant to order any whiskey for the witness, and stated that the transactions between them were sales outright. Defendant, a witness in his own behalf, testified that he had never sold Jim Ramsey any intoxicating liquors of any kind; that on one occasion said Ramsey had requested witness to order some whiskey for him with an order witness was sending for himself to a wholesale grocery house in Knoxville, Tenn.; that Ramsey gave witness $1.66, the exact amount of the cost of what he desired to get, and witness wrote the order that night and sent it off the next morning after receiving the money, sending for some at the same time for himself; that witness suffered from asthma and took whiskey for it, under the advice and prescription of a regular physician.

The judge charged the jury, who rendered a verdict to the clerk, which seems to have been without objection. The verdict so rendered, was in form, as follows: "Not guilty as to retailing cider or liquor, but guilty as to ordering one gallon of liquor for Ramsey." The jury having, it seems, been discharged, the Court ordered an entry made as follows:

"The jury for their verdict say they find defendant, James Whisenant, guilty. The jury further say they find defendant not guilty of selling intoxicating cider, and not guilty of selling liquor, other than the gallon ordered and delivered to defendant, Ramsey, as testified to by defendant, James Whisenant."

There was judgment on the verdict, as entered by the Judge, and defendant excepted and appealed.

*Assistant Attorney General Clement* for State.
*J. M. Mull* and *J. T. Perkins* for defendant.

HOKE, J., after stating the case: The laws of this State have thus far not made the purchase of whiskey a criminal offense, when it is bought by the purchaser himself and for his own use. The statute which most nearly approaches this is section 3534, of Revisal, which makes it criminal for one to procure whiskey for another by reason of an unlawful sale, and constitutes such a person the agent of the vendor in such an illegal transaction. We have so construed this statute at the present term. *State v. Burchfield.*

To bring one who procures whiskey for another under this statute, it will be noted that the sale by which it was procured must be illegal, and the law does not apply to cases where the sale is not illegal, or where our State legislation on the subject cannot apply to and affect the transaction. Such cases are not within the purview of the section referred to, Revisal, section 3534, but, as to them, the general doctrine obtains, that in a sale of whiskey, where one acts entirely as agent of the buyer, having no interest in the whiskey, and taking no part in sale as vendor, nor as his agent or employee, such person is not indictable under the laws controlling the subject as they now stand. *State v. Smith,* 117 N. C., 809.

Applying the principle announced and sustained in these decisions to the facts presented, we think there was, in effect, a verdict of not guilty rendered by the jury, and, on that finding, the defendant is entitled to be quit of any other or further molestation by reason of the occurrence tried and determined under this indictment against him. There was no testimony offered that would justify or permit a finding that a sale of whiskey consummated in Knoxville, Tenn., was an illegal sale; and if there had been, it would seem that, by reason of the commerce clause of the Federal Constitution, our State legislation on the subject could not affect the transaction, in respect to its criminality, until and after there had been a delivery within the State. *State v. Trotman,* 142 N. C., 662. By fair intendment, and especially when

taken in connection with the testimony on the subject, the verdict, as it was rendered by the jury, could only mean that they acquitted the defendant of retailing either liquor or cider, except in so far as the order sent for Ramsey to the house in Knoxville made out a case of guilt. This sale at Knoxville, as we have just said, was not illegal, and there was no evidence touching such order to show that defendant acted otherwise than as the buyer's agent.

The verdict then, as stated, amounted, by fair intendment, to a verdict of not guilty. As said in Clark's Criminal Procedure, page 486: "A verdict is not bad for informality or clerical errors in the language of it, if it is such that it can be clearly seen what is intended. It is to have a reasonable intendment, and is to receive a reasonable construction, and must not be avoided except from necessity."

"This being a correct interpretation of the verdict as rendered by the jury, it was not within the province or power of the court, after they were discharged, to amend or alter their deliverance, in a matter of substance, to defendant's prejudice." Clark, 487.

And our own decisions on both propositions cited from Clark are in substantial accord with the author. *State v. Arrington,* 7 N. C., 571. In this case it was held, among other things, "That wherever a prisoner, either in terms or effect, is acquitted by the jury, the verdict as returned should be recorded." And *Chief Justice Taylor,* in a concurring opinion, speaking to this question, said: "Some of the harsh rules of the common law, in relation to criminal trials, have been gradually softened by the improved spirit of the times; and this, among others, is relaxed in modern practice, where the jury bring in a verdict of acquittal. It is considered as bearing too hard on the prisoner, and is seldom practiced. Hawk., ch. 47, sec. 11, 12. I think this course of proceeding is fit to be imitated here, whenever a prisoner, either in terms or effect, is acquitted by the jury, and that in

all such cases the verdict should be recorded; although I am persuaded that they were desired to reconsider their verdict in this case, with the purest intention, and solely with a view that they might correct the mistake they had committed. The verdict first returned ought to have been recorded; and it ought to be done now, *valeat·quantum valere potest.* The effect will be the same as if a verdict of acquittal were recorded; but I think it most regular to put upon the record what the jury have found."

There was error in respect to matters as indicated, and this will be certified to the end that the verdict as rendered by the jury be recorded, and the defendant be discharged.

Reversed.