ALLEN, J., concurring; CLARK, C. J., dissenting.
The defendant was arrested upon a warrant issued by the recorder of Vance County, and based upon the following affidavit of M. N. Parrish:
M. N. Parrish, being duly sworn, complains and says that at and in said county on or about 28 April, 1913, Zip Wilkerson did unlawfully and willfully have in his possession 11 1/2 gallons of whiskey for sale, contrary to the statute in such case made and provided, and against the peace and dignity of the State.
M. N. PARRISH.
He was tried before the recorder, convicted, and appealed to the Superior Court. The evidence at his trial in the latter court tended to show that defendant had been employed by ten men near Henderson in Vance County, who were customers at his store, to go to Virginia and buy for them 10 gallons of whiskey, 1 gallon for each man. He agreed to do so if they would pay him $2.50 for the service. Each (434) of them gave him $2 to pay for the whiskey, and 25 cents for buying and hauling it. He hauled for the public, and kept a horse and buggy and also a wagon for the purpose. He went to Virginia in his buggy, bought the liquor there with the money, and was hauling it back for delivery to them, when, on the way to his home, he was arrested by the officer, with the whiskey in his possession. He bought a gallon for himself, and had in his wagon, at the time of the arrest, 11 gallons of corn liquor in three kegs and two bottles. The gallon which he bought for himself was for his personal use and not for sale, nor did he know that any of the other persons for whom he bought the liquor intended to sell it or any of it. He received only 25 cents from each man for buying and hauling it.
Upon this evidence, which in the main was the testimony of the defendant himself, at least the material parts of it, the court charged the jury that if they found, beyond a reasonable doubt, the defendant had in his possession more than one gallon of spirituous liquor at the time of his arrest, and he was not a druggist and had no medical depository, the law made it prima facie evidence of the violation of the act passed by the General Assembly in 1913, known as the "Search and Seizure Law"; *Page 348 
that is to say, if those facts had been proven to them beyond a reasonable doubt, that statute puts upon the defendant the duty of going forward and satisfying the jury by the greater weight of the evidence that, in fact, he did not have the liquor in his possession for the purpose of sale, and, further, that if he bought the liquor as above set forth, and it was taken while in his possession before the bulk was broken or there had been any distribution among the men for whom he bought it, then, as matter of law, he was guilty of violating the act of 3 March, 1913, known as the "Search and Seizure Law," and they should convict; but if they had a reasonable doubt about it, they should acquit. The jury returned a verdict of guilty. Judgment was entered thereon, and defendant appealed.
After stating the case: The defendant was charged with a violation of the act of 1913, it being chapter 44, entitled "An act to secure the enforcement of the laws against the sale and manufacture of intoxicating liquors," ratified 3 March, 1913. The act makes it unlawful for any person, firm, association, or corporation, other than druggists or medical depositories, duly licensed, "to have or keep in his, their, or its possession, for the purpose of sale, any spirituous, vinous, or malt liquor," and makes proof of any one of certain facts prima facie evidence of the violation of the act; and, among others, it is provided that "the possession of more than one gallon of spirituous liquors at any one time, whether in one or more places," shall constitute such prima facie evidence of the fact that it is kept for sale in violation of the act.
Having clearly before us the nature of the particular charge against the defendant, the law alleged to have been violated and the proof offered in support of the charge, we are prepared now to consider the objection urged by the defendant's counsel to the charge of the court.
The jury were instructed that the fact of his having in his possession more than one gallon of the liquor made out a prima facie case against the defendant. If the court had stopped here, and not qualified this instruction, it would have been correct; but it did not do so, but went beyond the terms of the statute and the law when it further charged that itthen was the duty of the defendant "to go forward and satisfy the jury, by the greater weight of the evidence, that he did not have the liquor in his possession for the purpose of sale." In this further instruction we think there was error. The defendant, as we have shown, is charged, under the act of 1913, with unlawfully having spirituous liquor *Page 349 
in his possession for the purpose of selling it, and nothing else, and proof of the possession of more than one gallon of such liquor is made primafacie evidence of the unlawful act, which is, that it is held by him for the purpose of sale, an act forbidden by the general law. It (436) is not made unlawful for a person to have more than one gallon of spirituous liquor in his possession, but it is criminal to have possession of that quantity for the purpose of sale, and while the bare possession of so much may, in itself and as a fact, be innocent, it is yet made primafacie evidence of guilt under the statute, as in S. v. Barrett,138 N.C. 630. But it is only evidence, and while it has the added force or weight of being prima facie, the latter means no more than that it is sufficient for the jury to convict upon it, alone and unsupported, if no other proof is offered; but upon the whole evidence, whether consisting of the mere fact of possession or of additional facts, the jury are not bound to convict, but simply may do so if they find, beyond a reasonable doubt, or are fully satisfied that the defendant is guilty. prima facie means at first; on the first appearance; on the face of it; so far as can be judged by the first disclosure; presumably. These are the definitions of the law, as we learn from the books. Black's Dict. (1 Ed.), 539.
The jury are no more required to convict upon a prima facie case than they are to acquit because of the presumption of innocence. They must judge themselves as to the force of the testimony and its sufficiency to produce in their minds a conviction of guilt. In civil cases the rule is the same (with a difference in the quantum), as prima facie evidence only carries the case to the jury, and does not entitle the party in whose favor it has been offered to a verdict as matter of right.
Referring to this rule, as applied to civil cases, and the presumption, or prima facie case, arising under the maxim, res ipsa loquitur, which presents one of the strongest of such cases, the Supreme Court of the United States has recently said: "In our opinion, res ipsa loquitur
means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking; but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipso loquitur, where (437) it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff. Such, we think, is the view generally taken of the matter in well considered judicial opinions." Sweeney v. Erving, 228 U.S. 233. The Court cites with *Page 350 
approval the numerous cases decided by this Court on the same subject.Womble v. Grocery Co., 135 N.C. 474; Stewart v. Carpet Co., 138 N.C. 60;Lyles v. Carbonating Co., 140 N.C. 25; Ross v. Cotton Mills, ibid., 115; Board of Education v. Makely, 139 N.C. 31; Overcash v. Electric Co.,144 N.C. 572; Winslow v. Hardwood Co., 147 N.C. 275.
Justice Hoke says, for the Court, in Furniture Co. v. Express Co., 144 N.C. at p. 644: "It may be well to note here that, in using the termsprima facie and presumptive, the terms do not import that the burden of the issued is changed, but that on the facts indicated the plaintiff is entitled to have his cause submitted to the jury under a proper charge as to its existence or nonexistence and the effect of any presumption which may attach, as indicated in the cases," citing several of the cases to which we have already referred.
It may, therefore, be taken as settled in this Court, at least, and we believe the same may be said of most, if not all, of the courts, that primafacie or presumptive evidence does not, of itself, establish the fact or facts upon which the verdict or judgment must rest, nor does it shift the burden of the issue, which always remains with him who holds the affirmative. It is no more than sufficient evidence to establish the vital facts without other proof, if it satisfies the jury. The other party may be required to offer some evidence in order to prevent an adverse verdict, or to take the chances of losing the issue if he does not, but it does not conclude him or forestall the verdict. He may offer evidence, if he chooses, or he may rely alone upon the facts raising the prima facie
case against him, and he has the right to have it all considered by (438) the jury, they giving such weight to the presumptive evidence as they may think it should have under the circumstances.
The defendant is not required to take the laboring oar and to overcome the case of the plaintiff by a preponderance of evidence, is what we said in Winslow v. Hardwood Co., supra, and substantially the same thing was said in the other cases we have cited. This is undoubtedly the rule in civil actions, and it applies with greater force to criminal cases, where the defendant has the benefit of the doctrines of reasonable doubt and the presumption of innocence. How can we say the prima facie evidence, or that which is apparently sufficient, excludes all reasonable doubt of guilt, and by its own force overcomes the presumption of innocence? The bare statement of the proposition is sufficient to show its fallacy. It would destroy the presumption of innocence and take away the protection of the other rule as to reasonable doubt. The presumption of innocence attends the accused throughout the trial and has relation to every essential fact that must be established in order to prove his guilt beyond a reasonable doubt. Kirby v.U.S., 174 U.S. 47. He is *Page 351 
not required to show his innocence; the State must prove his guilt. No valid conviction can be had in law which is based solely upon prima facie
evidence as conclusive and foreclosing the verdict, or which even casts upon the defendant the burden of showing his innocence by the greater weight of the evidence. We know of no such rule, and it finds no warrant in the language of the statute. The decisions are all the other way, when rightly interpreted. In a case very similar to this one, the Court held that the jury must consider all the circumstances, whether introduced by the State or the accused, in connection with the evidence proving the possession of the liquor, taking into account as well the presumption of the defendant's innocence. S. v. Cunningham, 25 Conn. 195.
But directly to the point, and one which exactly fits this case, is the case of People v. Cannon, 139 N.Y. 32, where the Court thus sets forth with great force and clearness the limitations upon the power of the Legislature to create such presumptions, their extent and scope, and the rights of the defendant, notwithstanding them: "It cannot be disputed that the courts of this and other States are committed (439) to the general principle that even in criminal prosecutions the Legislature may with some limitations enact that when certain facts have been proved, they shall be prima facie evidence of the existence of the main fact in question. (See cases cited in 103 N.Y. 143, supra.) The limitations are that the fact upon which the presumption is to rest must have some fair relation to, or natural connection with, the main fact. The inference of the existence of the main fact because of the existence of the fact actually proved must not be merely and purely arbitrary, or wholly unreasonable, unnatural, or extraordinary, and the accused must have in each case a fair opportunity to make his defense, and to submit the whole case to the jury, to be decided by it after it has weighed all the evidence and given such weight to the presumption as to it shall seem proper. A provision of this kind does not take away or impair the right of trial by jury. It does not in reality and finally change the burden of proof. The people must at all times sustain the burden of proving the guilt of the accused beyond a reasonable doubt. It, in substance, enacts that, certain facts being proved, the jury may regard them, if believed, as sufficient to convict, in the absence of explanation or contradiction. Even in that case the court could not legally direct a conviction. It cannot do so in any criminal case. That is solely for the jury, and it could have the right, after a survey of the whole case, to refuse to convict unless satisfied beyond a reasonable doubt of the guilt of the accused, even though the statutory prima facie evidence were uncontradicted. The case of Commonwealth v. Williams (6 Gray, 1) supports this view." *Page 352 
In Board of Excise v. Merchant, 103 N.Y. 143, the Court in dealing with this very question says that by the presumption or prima facie
case arising by statute from possession of the liquor, "the burden of proof is not even really changed," and then adds that the case must be submitted to the jury, notwithstanding the presumption, upon the evidence, whatever it is, "with the burden still resting upon the prosecution (440) to establish the guilt," the offense in that case being an unlawful sale of liquor.
It is also stated as law in Black on Intoxicating Liquors that "the Legislature has undoubtedly a very extensive power in respect to fixing or modifying the rules of evidence to be applied by the courts. The exercise of this power, however, in relation to criminal proceedings, is subject to certain important limitations, among which are the following: (1) The Legislature, in enacting rules of evidence, must not usurp judicial functions; (2) such rules must not be of the nature of ex post facto
laws, or illegally retroactive in their operation; (3) they must not deprive the accused of his constitutional right to be confronted with the witnesses against him; (4) the Legislature cannot compel a defendant to furnish evidence against himself; (5) nor deprive him of his right to a trial by jury; (6) it would be unlawful to make any given fact or state of facts conclusive evidence of guilt, in negation of the common-law presumption of innocence. The rules of evidence in prosecutions under the liquor laws have frequently been the subject of legislative attention, and the changes made have sometimes shown a wide departure from common-law principles. All such statutes — which for the most part are designed to facilitate convictions by admitting presumptive or indirect proof of certain facts — must be brought to the test of constitutional principles such as those above enumerated. If found to be in violation thereof, they are not defensible on any ground of public policy or the welfare of the community. As a rule, however, these acts have been so framed as to escape constitutional objection. Thus, a provision that, in prosecutions for the common selling of intoxicating liquors, delivery in or from any building or place other than a dwelling-house shall be deemedprima facie evidence of a sale, is constitutional and valid. This neither conclusively determines the guilt or innocence of the party who is accused nor withdraws from the jury the right and duty of passing upon and determining the issue to be tried. And the same is true of a statute providing that, whenever an unlawful sale of liquor is alleged, and a delivery proved, it shall not be necessary to prove a payment, but (441) such delivery shall be sufficient evidence of sale. So if a law enacts that where a person is seen to drink intoxicating liquor on the premises of one who has simply a license to sell liquor for consumption *Page 353 
off the premises, it shall be prima facie evidence that the liquor was sold by the occupant of the premises with the intent that it should be drunk thereon."
This Court has fully sustained this principle and approved these authorities by citing and relying upon them in S. v. Barrett, 138 N.C. 630. It was held in Barrett's case that notwithstanding the statute expressly declares that the possession of more than a gallon of spirituous liquor shall be prima facie evidence of the purpose to sell it, it is, at last and in its essence, but evidence of guilt, and not conclusive or determinative of defendant's guilt even by itself and unexplained. It further holds that there is no shifting of the burden to the defendant, but it rests upon the State to establish the accusation of the bill of indictment beyond a reasonable doubt.
It will be observed that, in our case, the court placed the entire burden upon the defendant to show his innocence, for the instruction to which exception was taken is that the statute requires him to satisfy the jury by the greater weight of the evidence that in fact he did not have the liquor in his possession for the purpose of sale, whereas, according to all the authorities, and especially in Barrett's case, the burden is on the State throughout the trial. The defendant profited little or nothing by the subsequent charge that, if the jury had a reasonable doubt about the facts recited by the court, being those which the defendant must prove by the greater weight of the evidence, they should acquit. This, to say the least of it, was very confusing, if not contradictory. What advantage did he gain by the charge as to reasonable doubt, after the jury had been told that there was a presumption against him and he must "satisfy them by the greater weight of evidence" of his innocence? It deprived him of the presumption of innocence, and practically eliminated the benefit of the doctrine as to reasonable doubt by so weakening it that it amounted to nothing; and all of this was done under a statute (act of 1913) which merely establishes a prima facie case for the State, sufficient, it is true, to carry the case to the jury, with the (442) right to convict, but leaving in full force the doctrine of reasonable doubt and also the presumption of innocence; for a man, even under our present laws, may have more than a gallon of liquor in his possession for a perfectly lawful and innocent purpose. It is not the possession that is unlawful, but the forbidden purpose for which it is held.
The Attorney General admitted that there was error in the charge, under the decisions in S. v. Barrett, 138 N.C. 645; S. v. McIntyre, 139 N.C. 600;S. v. Dowdy, 145 N.C. 432; S. v. Dunn, 158 N.C. 654, and S. v.Mostella, 159 N.C. 461; but he argued that what defendant *Page 354 
did and proposed to do with the liquor, in law, constituted a sale, by his own admission on the stand. We do not assent to this position. it was lawful to buy the liquor in Virginia, and if he made the purchase there, acting solely and in good faith as agent for the other persons, who sent him there for the purpose of buying it for them, he would not be guilty of selling liquor if he had delivered it. It was so decided in S. v.Whisenant, 149 N.C. 515, as we think, where it appeared that the defendant, as agent, had ordered some whiskey for the prosecuting witness, which was to be shipped from another State, where our laws did not operate, and when it arrived, he delivered it to the witness. It was held, if defendant acted bona fide, that he was not guilty, although he ordered the whiskey as agent and received the money for it; and it was further said to be a transaction of interstate commerce. Under either view, defendant could buy liquor for another, as his agent, if he acted in good faith and was not concealing, under the guise of an agency, a transaction which was in fact a sale. If liquor can thus be ordered through an agent from another State, without violating the law, if done bona fide, why cannot the agent go into that State in person and buy it, where it can be lawfully sold, and then transport and deliver it himself? An agent may also receive at least a fair compensation for his services, provided the money is paid to him strictly as such, and not as any part of the price for the liquor. His intent and the true nature of the transaction were questions for the jury, under a (443) proper charge from the court. S. v. Allen, 161 N.C. 226, supports this view directly, and the facts were much like those in this case. S. v. Johnson, 139 N.C. 641, is not in point, for there the jury found that the prosecuting witness, Brown, had paid the price of the liquor, which was fixed by the defendant beforehand. There was no agency. He was not buying for another, but selling to him.
Nor is the defendant indictable under Revisal, sec. 3534, as he procured the liquor in Virginia, where it was lawful to sell it. S. v. Smith,117 N.C. 809; S. v. Burchfield, 149 N.C. 537. The case of S. v. Smith, just cited, seems to be decisive of the point here raised, and, we think, is fatal to the judge's charge. It is there held that it is no more unlawful to buy through one's agent than to buy directly himself, and the agent, when he buys lawfully, is just as innocent as his principal would be if he had bought himself, the real question being whether there was a bona fide agency or a sale in disguise. It is a question of intent, without regard to the fair appearance of the transaction. What is it, in fact or in substance and legal effect, is the question; and in this view, which is the true one, we are forcibly reminded of what Justice Ruffin observed in S. v. Gilbert,87 N.C. 527, with regard to an *Page 355 
indictment for carrying a concealed weapon. He said the offense of which the defendant is charged forms no exception to the general rule, that to constitute a crime there must be a criminal intent, and the Court perceived no good reason why it should be. "The law is a wholesome one, and its constant enforcement according to its true spirit and intention meets the desires and expectations of every well disposed and peaceable citizen; but some care should be used, lest by pushing its requirements too far it may result in a reaction of sentiment against it."
If it be said that defendant is guilty under Laws 1911, ch. 133, known as the "Club Act," it is quite enough to say that he was not indicted, nor was he convicted, under that law, and he has not had any opportunity to defend himself against any such charge. The Attorney-General concedes that he is charged only with violating the act of 1913, and the judge below so expressly charged the jury. Besides, if the indictment had been framed upon the act of 1911, ch. 133, there is no fact (444) made presumptive or prima facie evidence by it, and the charge would, if possible, be more erroneous than if confined to the act of 1913, as it should be. It may be, as argued by counsel, that upon the evidence in this case the jury would be warranted, under proper instructions, in convicting the defendant of the offense created by the act of 1911, ch. 133, if he had been charged with a violation of that act. We need not give any opinion on that question, it not being raised on this record, as there is no allegation upon which such a conviction could be based, and no reference whatever to the act. The allegations and proof must correspond. It would be contrary to all rules of procedure and violative of his constitutional right to charge him with the commission of one crime and convict him of another and very different one. He is entitled to be informed of the accusation against him and to be tried accordingly. S. v. Ray, 92 N.C. 810; S. v. Sloan, 67 N.C. 357;S. v. Lewis, 93 N.C. 581; Clark's Cr. Proc., 150.
We think that there is evidence sufficient to sustain a conviction upon the present indictment, but the jury must be so guided by the court as to find the facts essential to establish his guilt.
The question here is as to the bona fides of the defendant. Was he really acting solely in the capacity of agent when he purchased the liquor, or was that a mere pretense, under cover of which he was violating the law by selling liquor, or having it for sale? The case should have been submitted to the jury in this aspect, with the burden on the State to make out its case to their full satisfaction. If defendant was acting honestly and not deceptively, he had the right to buy liquor in Virginia, where it was lawful to sell to him, and to return to this State with it for the purpose of making delivery to the parties for whom *Page 356 
he bought it, and if this was all, it would not constitute a sale of the liquor or the possession of it with the unlawful purpose to sell, within the meaning of the act of 1913. S. v. Allen, 161 N.C. 226. The possession of the liquor, though, would carry the case to the jury.
The rule as to the legal effect or significance of prima facie
(445) evidence has long prevailed in this and other courts, and we are not aware of any decision of this Court which has stated it or has applied it otherwise than is done in this case.
There was error in the charge of the court in the respect pointed out, for which another trial is ordered.
New trial.