STATE *v.* CARDWELL.

We have examined the record, and find

No error.

---

STATE v. JEFF CARDWELL.

(Filed 22 April, 1914.)

1. **Intoxicating Liquors — Criminal Law — Indictment — Offense Charged—Interpretation of Statutes.**

   Where the prisoner is charged with an act made an offense by one statute, he may not be tried and convicted for another act made an offense under a different statute; and where the offense charged is an unlawful sale of whiskey made to a person named, the prisoner may not be convicted under Revisal, sec. 3534, relating to purchases from an illicit dealer; nor under Revisal, sec. 3527, relating to soliciting orders; nor under the Federal Penal Code.

2. **Intoxicating Liquors—Lex Loci—Trials—Evidence—Ownership—Interstate Commerce.**

   Where the defendant, upon trial for violating our prohibition laws, has received here money for the purchase of whiskey, which is delivered here through an express company, and there is no evidence that he has thus acted as the agent of a seller in an-

STATE *v.* CARDWELL.

other State, where such sale was lawful, or for the sole accommodation of the purchaser, here, without profit, the acts of the prisoner are consistent with ownership of the whiskey at the time of sale, notwithstanding he may have had it sent from another State; and the evidence is sufficient to sustain a conviction of the offense charged. The Federal statute known as the Webb-Kenyon Act has no application.

3. Trials—Evidence Excluded—Admissions—Harmless Error.

The exclusion of testimony concerning matters admitted upon the trial to be true, if error, is harmless.

4. Intoxicating Liquors—Indictment—Various Sales—Elect Between —Evidence.

Where the warrant for the unlawful sale of intoxicating liquors charges several separate sales at various times, the defendant's motion that the State elect between the evidence of the different sales will be denied.

CLARK, C. J., dissenting in part, but concurring in result.

APPEAL by defendant from *Devin, J.,* at January Term, 1913, of ROCKINGHAM.

The defendant was convicted upon the charge of unlawfully selling spirituous liquors to O. C. Sharp, who was the only witness for the State, and testified as follows: That he knew Jeff Cardwell, and that he lives in Reidsville. That he had a transaction with Jeff Cardwell relative to whiskey. That he went to him and asked him if he would get him a gallon of whiskey. He said he would, and witness told him the kind he wanted, and said he wanted Turkey Mountain Corn, and gave him the price of the whiskey, $2.25. He got the whiskey through the Southern Express Company's office six or seven hours thereafter.

On cross-examination, the witness O. C. Sharp said he really did not know the date, but it was some time before Christmas, 1913. This $2.25 was the list price of the liquor house. That was what the liquor sold for. He had a catalogue of the prices of the different brands. This was the list price of this liquor; $2.25 is the catalogue price of Turkey Mountain Corn.

Redirect examination: Witness said that he had not obtained any liquor from the defendant at all; had given to him money before that time two or three times, and received liquor. On these occasions he paid him the same amount of money, and got

the same kind and amount of liquor, but did not remember exactly the first time he went to him, but to the best of his knowledge he told defendant that he wanted a gallon of whiskey and asked him if he would get it for him, and he said he would. That he got the whiskey through the Southern Express Company. When he received the first gallon he knew the price of Turkey Mountain Corn. That he thinks he got this information as to the price of the whiskey at that time from some one who came in his store and left a catalogue there. That he didn't get his first information as to the price of Turkey Mountain Corn from a booklet that came in the first package; a booklet had come in every package, but he had heard the price before. But he knew after the first package came because a booklet was in it. This whiskey gotten for him came through the Southern Express Company on every occasion, and he paid the defendant the list price every time.

O. C. Sharp, being recalled, said that he did not know of his own knowledge where the liquor came from, but it was on all occasions put up in a carton with an express label on it.

It was admitted that the books of the Southern Express Company would show that the other liquors testified to as received by the State's witness, O. C. Sharp, came by the Southern Express Company from Danville, in the State of Virginia.

At the conclusion of this evidence the court instructed the jury that if they believed the evidence beyond a reasonable doubt, that they would find the defendant guilty. To which charge the defendant excepted.

There was a verdict of guilty, and from the judgment pronounced thereon the defendant appealed.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*C. O. McMichael and P. W. Glidewell for defendant.*

ALLEN, J. The defendant is charged in the indictment with unlawfully selling intoxicating liquors to O. C. Sharp, and as he cannot be indicted for one offense and tried for another, we are not permitted to inquire whether he is guilty under Revisal,

sec. 3534, which, as said in *S. v. Burchfield,* 149 N. C., 540, "was intended to prevent the purchase by one person from an illicit dealer," nor under Revisal, sec. 3527a, for soliciting orders for intoxicating liquors, nor under the Federal Penal Code.

If it could be reasonably inferred from the evidence that the defendant ordered the whiskey he is charged with selling, from a liquor house in Virginia, at the request of Sharp and solely for his accommodation, we would order a new trial, as such a transaction is not illegal under the State law in the county of Rockingham (*S. v. Whisnant,* 149 N. C., 515; *S. v. Allen,* 161 N. C., 226), and the charge excludes from the jury the consideration of this view; but this does not appear.

There is some evidence that the whiskey came by express from Virginia, but none that the defendant ordered it, or that it came from any one except himself, and nothing inconsistent with absolute ownership by the defendant.

So far as appears from the record, the defendant owned the whiskey, which was either in this State or in Virginia, and made the contract of sale, received the money, and through the Express Company delivered the whiskey in this State, which would constitute an illegal sale. *Pheifer v. Israel,* 161 N. C., 409.

He does not purport to act as agent for a house in Virginia nor for Sharp, and throughout the transaction deals with the whiskey as his own, and it would require a strained and highly technical construction of the evidence to reach the conclusion that the defendant ordered the whiskey from a liquor house for the accommodation of the witness, particularly so when the defendant had it in his power to put the question beyond doubt.

The Webb-Kenyon Act is not remotely involved in this case, and we therefore refrain from discussing it.

The validity and construction of that act was argued at this term in *Kistler v. R. R.,* in which, in addition to very able briefs on the legal questions involved, statistics are collected as to the growth of the sentiment in behalf of prohibition, which cannot aid us in determining whether Cardwell sold liquor to Sharp.

If there was any error in excluding the evidence offered by the defendant, that the label on the package showed that it came from Danville, it was cured by the admission made by the State.

There was no error in denying the motion to compel the State to elect between the evidence of the different sales. *S. v. Freeman,* 162 N. C., 596.

No error.

CLARK, C. J., concurs in the result and in the opinion proper, but not in the *obiter* that if the liquor had been shipped in from Danville, Va., the defendant could not have been convicted, citing *S. v. Whisnant,* 149 N. C., 515; *S. v. Allen,* 161 N. C., 226, for the reason that those cases were written before the passage of the Webb-Kenyon law, which was enacted for the very purpose of taking away the defense, on which those decisions were based, that interstate shipments of liquor were protected from the enforcement of a State statute.

Revisal, 2080, makes the place of delivery of intoxicating liquors the place of sale. This act was sustained in *S. v. Patterson,* 134 N. C., 612, which has been repeatedly cited since with approval. But in *S. v. Whisnant* and *S. v. Allen, supra,* it was held that where the liquor had been shipped in from another State the decision in *S. v. Patterson, supra,* and Revisal, 2080, would not apply. It was to cure this defect that the Webb-Kenyon law was passed, which is entitled "An act divesting intoxicating liquors of their interstate character in certain cases." This act provides that the shipment of intoxicating liquors into any State or territory in which said spirituous or intoxicating liquor "is intended by any person interested therein to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State, territory, or district of the United States, is hereby prohibited."

· The shipment of intoxicating liquors from another State into this State being thus deprived by act of Congress of its interstate character, it follows that when the liquor, if it came from Danville, Va., reached Reidsville, our laws applied to it as fully in

every respect as if it had been shipped in from another point in this State, and the decision in *S. v. Patterson* would fully apply. The Wilson act had provided that when whiskey was shipped into a State or a district in which the sale of intoxicating liquors was forbidden, that it should be "subject to the operation and effect of the laws of such State or territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or territory." The United States Supreme Court, however, in *Rhodes v. Iowa,* 170 U. S., 412, and in *Wilkerson v. Rahrer,* 140 U. S., 100, construed the word "arrival" in the Wilson act to mean the actual delivery of the liquor to the consignee, and hence that it was exempt till then from being subject to the State law forbidding the sale of intoxicating liquors.

In this latter case, however, *Chief Justice Fuller,* speaking for the Court, says: "No reason is perceived why, if Congress chooses to provide that certain designated subjects of interstate commerce shall be governed by a rule which *divests* them of that character at an earlier period of time than would otherwise be the case, it is not within its competency so to do." Upon this hint, Congress acted by passing the Webb-Kenyon law, which does so divest intoxciating liquors of their interstate character at the earliest period of time, that is, upon their delivery to the carrier.

In the same case *Chief Justice Fuller* further says: "Congress did not use terms of permission to the States to act, but simply removed an impediment to the enforcement of State laws in respect to imported packages in their original condition, created by the absence of a specific utterance on its part." Congress in the Webb-Kenyon law acted upon this hint also and provided for the application of that statute to intoxicating liquor "which is intended by any one interested therein to be received, possessed, sold, *or in any manner used,* either in the original package *or otherwise,* in violation of any law of such State."

It therefore follows, both by the letter and the spirit of the Webb-Kenyon law, that the shipment of intoxicating liquors from another State to be "in any manner used, either in the

original package or otherwise, in violation of any law" of this State, is prohibited, and such articles are not, therefore, articles of interstate commerce, and cannot be protected in any manner from the enforcement of the State law as to their use in any manner. Such intoxicating liquors once in this State in any form, whether in the original package or not, and before, as well as after, the delivery to the consignee, are "subject to the State law to the same extent and in the same manner as though such liquors had been produced in this State." This is the language of the Wilson act, which is still in force, and the Webb-Kenyon law struck out the limitation which had been put upon the word "arrival" by the decision in the *Rahrer* and *Rhodes cases* above cited by divesting such liquor of its interstate protection from its receipt by the carrier. Not being a subject of interstate commerce, it cannot receive immunity on that account in any respect. The immunity until delivery to the consignee was stricken out by the Webb-Kenyon law, and this was the object expressed in the title of the act and in its text, and was fully understood to be such, as is shown by the debates in Congress and by the veto message of President Taft, which was promptly overruled by a two-thirds vote in both houses of a Congress in which his party friends were in the majority.

Indeed, if the act was not passed for the purpose of putting in force the provision of the Wilson bill, which had placed intoxicating liquors shipped in from another State on the same footing as if they had been produced in this State, by striking out *ab initio* the protection of interstate commerce, then there was no purpose in its enactment, and the several hundred lawyers in Congress who voted for it or against it, and the President vetoing it, were ignorant of what they were doing.

Revisal, 3534, provides: "If any person shall unlawfully procure and deliver any spirituous or malt liquors to another, he shall be deemed and held in law to be the agent of the person selling said spirituous and malt liquors, and shall be guilty of a misdemeanor and punished in the discretion of the court." This statute has been fully considered and sustained in an able opinion by *Walker, J.,* 149 N. C., 537, which has been repeatedly cited since as authority. If, therefore, Cardwell had been acting

as agent of the seller in Danville, this statute made him a co-principal and indictable for the sale, according to the indictment against him.

Indeed, independent of the Webb-Kenyon law, if the defendant either for himself or as agent for another solicited the order for the liquor, he was indictable for such sale, under this bill, even though the principal was in another State. Pell's Revisal, 3527a. This act was held valid when the principal was in another State, in *Delamater v. S. Dakota,* 205 U. S., 93. He would also have been indictable in the Federal court under U. S. Penal Code, 239, which makes it criminal if one "in any manner act as agent for the buyer or (nonresident) seller." The fact that he is indictable under the Federal statute for such act does not make him any less guilty of a violation of the State law. A man can be indicted for retailing both under the Federal statute and under the State statute. The same is true for acting as agent in procuring liquors from another State to be shipped into this State, for the offense against the State law is not merged in the offense against the Federal law. If the liquor had been shipped c. o. d., the Express Company would have been liable to a fine of $5,000 under the same section. These statutes are in sympathy with the purpose of the Webb-Kenyon law, which was enacted to enable a State which has adopted prohibition of intoxicating liquors as its public policy to enforce such policy against being nullified by shipments of liquor from other States.

By virtue of the Webb-Kenyon law, whether the intoxicating liquor was brought from Virginia or produced here, the transaction stands upon the same footing, for it has been *"divested* of its interstate character." Under Revisal, 3534, the defendant is made the agent of the seller, if he was not selling himself, and as a coprincipal is indictable for the sale. This was held in *S. v. Burchfield,* 149 N. C., 537, and cases cited.

Reidsville, the place of its delivery, is the place of sale. Revisal, 2080; *Hoke, J.,* in *S. v. Herring,* 145 N. C., 420, and other cases affirming *S. v. Patterson,* 134 N. C., 612. To same effect, *Brown, J.,* in *S. v. Johnson,* 139 N. C., 641, which has been often cited and approved.

We have held that a contract made for the sale of liquor in this State is illegal, even though it was contemplated by the party that the liquor should be shipped from another State. *Vinegar Co. v. Hawn,* 149 N. C., 535; *Pfeifer v. Israel,* 161 N. C., 409. We have also held at this term that when the contract was made in another State for liquor to be shipped into this State for sale here, the contract was illegal and the plaintiff could not collect the purchase money. *Bluthenthal v. Kennedy,* 165 N. C., 372.

It has been contended that Congress could not regulate an article of interstate commerce by prohibiting its shipment altogether in certain cases. But the contrary has been uniformly held, and as to many articles. In *Champion v. Ames,* 188 U. S., 221, *Justice Harlan* said that lottery tickets had always been legitimate subjects of commerce, but that Congress possessed the power under the commerce clause to prohibit altogether their transportation between State and State. The opinion is clear and able, and its reasoning applies as fully to intoxicating liquors as to lottery tickets. What subjects shall thus be prohibited as articles of interstate commerce is a matter resting in the discretion of the lawmaking department of the Government, and is not subject to review by the courts.

In *Hoke v. U. S.,* 227 U. S., 308, the Court held that the power of Congress over interstate commerce is direct, without limitations, and far-reaching, and includes the transportation of persons as well as property, and therefore held valid the statute of 25 June, 1910, prohibiting the white slave traffic. In that case it was held that the regulative power of Congress extends to the absolute prohibition or transportation in transit both in interstate and foreign commerce, citing the lottery ticket case, 188 U. S., 221, above referred to; the *Pure Food Case, Egg Co. v. U. S.,* 220 U. S., 45, and other cases. This decision has been reaffirmed by that Court in *Wilson v. U. S.,* opinion by *Justice Pitney,* 24 Feb., 1914, U. S. Adv. Ops., 15 March, 1914, 348.

These opinions are conclusive of the power of Congress to regulate interstate shipments of intoxicating liquor into prohibition territory by prohibiting them altogether.

The power of Congress to decide what are subjects of interstate commerce, like its power to exclude articles from importation into this country in foreign commerce, has never been challenged. Besides the instances above cited as to lottery tickets, the pure food law, the white slave traffic, there are other instances, among them the Lacey act adopted in March, 1904, which forbids the transportation in interstate commerce of game killed in violation of a State law. There are other instances and there are bills pending to exclude from interstate commerce articles made by convicts or by children under a certain age, and the like. Indeed, in *Penn. v. Bridge Co.,* 59 U. S., 421, where the United States Supreme Court had held in a former decision that a certain bridge over a navigable stream was an obstruction to commerce, Congress at once enacted a statute that this particular bridge was not an obstruction to commerce, and the Court held that Congress had the power to so declare.

Three State Supreme Courts have already upheld the Webb-Kenyon law as construed in this concurring opinion, *i. e.,* the Supreme Court of Delaware in *S. v. Grier,* 88 Atlantic, 20 November, 1913; *S. v. Express Co.,* decided by the Supreme Court of Iowa, January, 1914; and a decision made this month by the Supreme Court of Kansas. To the same effect is an able opinion of *Bean, J.,* in *U. S. v. R. R.* in the United States District Court of Oregon, decided in January, 1914.

Indeed, Congress has taken every successive step that has been found necessary to enable prohibition States to enforce their public policies as to intoxicating liquors. For half a century, up to 1888, the courts recognized the jurisdiction of the States over interstate shipments of liquor from the time they entered the State to be the same as over domestic liquors. This was questioned in 1888 for the first time, in *Bowman v. Northwestern,* 125 U. S., 500 (by a vote of 5 judges against 4), and in *Leisy v. Hardin,* 135 U. S., 124 (3 judges dissenting), the Court basing its decision on the ground that as Congress had enacted no law restricting or limiting interstate commerce, such commerce should be free and untrammeled. The Wilson act was then passed to place liquors shipped into another State on arrival therein on the same footing in every respect and "as

STATE *v.* CARDWELL.

fully subject to its laws as if produced therein." The Court in *Rhodes v. Iowa,* 170 U. S., 412, held that "on arrival" meant delivery to the consignee. This deprived the States of jurisdiction up to the time of such delivery. Thereupon the Webb-Kenyon law was enacted to remove that restriction.

An act should always be construed according to its intent and with a view to remedy the evil. Any act that is not passed surreptitiously or by improper influences or inadvertence must be taken as expressing the will of the electorate. In considering what is the evil to be remedied and the will of the constituents of Congress, it will be appropriate to consider the present status and extent of the State laws prohibiting the sale of intoxicating liquors.

Absolute prohibition of the sale of intoxicating liquors as a beverage now prevails over three-fourths of the area of the United States, and as to 50 millions or 55 per cent of its population, as follows:

MAP OF THE
UNITED
STATES

■ WET
☐ DRY

State-wide prohibition has been adopted in 9 States, Maine, Kansas, North Dakota, Georgia, North Carolina, Oklahoma, Mississippi, Tennessee, and West Virginia, with an aggregate population of 14,685,961.

In 31 States, Local Option either by election or special acts of the Legislature has become operative as to 26,446,810 people of their population. These States are Alabama, Arizona, Cali-

fornia, Colorado, Delaware, Florida, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New York, Ohio, Oregon, Rhode Island, South Carolina, Texas, Utah, Vermont, Virginia, Washington, and Wisconsin. In Illinois, by the aid of the votes of the newly enfranchised women, 22 more counties have just been added to the above "dry" area.

In 3 States, Arkansas, Iowa, and South Dakota, the Legislatures have enacted State-wide Prohibition except as to localities which by a majority vote may exempt themselves. In these three States there are 3,693,201 people living in Prohibition territory.

In Wyoming and New Mexico the Legislatures have prohibited the sale of liquors except in certain incorporated municipalities. In still other States the Legislatures have arbitrarily placed certain areas under prohibition territory, thus adding to the aggregate population protected.

The United States Government has prohibited the sale of liquor among the Indians and, in certain portions of the territories, in military forts and reservations, in the navy, in the national Capitol, in "soldiers' homes," and in other specified areas under Federal control. As a result, as we have said, more than half the population of the United States now live under Prohibition and nearly three-fourths of our area is prohibition territory. The average addition per year in the last twenty years to dry territory has been 1,500,000 people per year.

Besides the States enumerated above, the Legislatures in the following States have submitted a State-wide Prohibition law to be voted on at the next general election: Virginia, Oregon, Idaho, Colorado, Washington, Michigan, and California. Each of these now has local option. The growth of the sentiment in our own State is shown by the fact that on a Referendum in 1881 Prohibition was defeated by more than 100,000 majority and in 1908 it was adopted by 44,000.

From the above it will be seen that the Prohibition sentiment may well be said to be predominant in more than the three-fourths of the States necessary to ratify a Nation-wide constitu-

tional amendment, and that it is as yet without foothold to any considerable extent in only three States, *i. e.,* Pennsylvania, New Jersey, and Nevada.

As the prohibition of the sale of intoxicating liquors is essentially a *State* matter in execution of the police power which is reserved to every State, Congress has seen the justice of providing against it being interfered with under the guise of interstate commerce. As the United States Supreme Court well said as to lotteries, 188 U. S., 321: "It would not permit the declared policies of the States which sought to protect their people against the mischiefs of the lottery business to be overthrown or disregarded by the agency of interstate commerce." This applies with equal force to the prohibition of the sale of intoxicating liquors. It has not been the intention of Congress to permit its control of interstate commerce to impair the police power of the States, but, on the contrary, to use it as an aid to the States in enforcing their home rule regulations.