CLARK, C. J., dissenting in part, but concurring in result.
The defendant was convicted upon the charge of unlawfully selling spirituous liquors to O. C. Sharp, who was the only witness for the State, and testified as follows: That he knew Jeff Cardwell, and that he lives in Reidsville. That he had a transaction with Jeff Cardwell relative to whiskey. That he went to him and asked him if he would get him a gallon of whiskey. He said he would, and witness told him the kind he wanted, and said he wanted Turkey Mountain Corn, and gave him the price of the whiskey, $2.25. He got the whiskey through the Southern Express Company's office six or seven hours thereafter. *Page 280 
On cross-examination, the witness O. C. Sharp said he really did not know the date, but it was some time before Christmas, 1913. This $2.25 was the list price of the liquor house. That was what the liquor sold for. He had a catalogue of the prices of the different brands. This was the list price of this liquor; $2.25 is the catalogue price of Turkey Mountain Corn.
Redirect examination: Witness said that he had not obtained any liquor from the defendant at all; had given to him money before that time two or three times, and received liquor. On these occasions he paid him the same amount of money, and got the same kind and (311) amount of liquor, but did not remember exactly the first time he went to him, but to the best of his knowledge he told defendant that he wanted a gallon of whiskey and asked him if he would get it for him, and he said he would. That he got the whiskey through the Southern Express Company. When he received the first gallon he knew the price of Turkey Mountain Corn. That he thinks he got this information as to the price of the whiskey at that time from some one who came in his store and left a catalogue there. That he didn't get his first information as to the price of Turkey Mountain Corn from a booklet that came in the first package; a booklet had come in every package, but he had heard the price before. But he knew after the first package came because a booklet was in it. This whiskey gotten for him came through the Southern Express Company on every occasion, and he paid the defendant the list price every time.
O. C. Sharp, being recalled, said that he did not know of his own knowledge where the liquor came from, but it was on all occasions put up in a carton with an express label on it.
It was admitted that the books of the Southern Express Company would show that the other liquors testified to as received by the State's witness, O. C. Sharp, came by the Southern Express Company from Danville, in the State of Virginia.
At the conclusion of this evidence the court instructed the jury that if they believed the evidence beyond a reasonable doubt, that they would find the defendant guilty. To which charge the defendant excepted.
There was a verdict of guilty, and from the judgment pronounced thereon the defendant appealed.
The defendant is charged in the indictment with unlawfully selling intoxicating liquors to O. C. Sharp, and as he cannot be *Page 281 
indicted for one offense and tried for another, we are not permitted to inquire whether he is guilty under Revisal, sec. 3534, which, as said in S. v. Burchfield, 149 N.C. 540, "was intended (312) to prevent the purchase by one person from an illicit dealer," nor under Revisal, sec. 3527a, for soliciting orders for intoxicating liquors, nor under the Federal Penal Code.
If it could be reasonably inferred from the evidence that the defendant ordered the whiskey he is charged with selling, from a liquor house in Virginia, at the request of Sharp and solely for his accommodation, we would order a new trial, as such a transaction is not illegal under the State law in the county of Rockingham (S. v. Whisnant, 149 N.C. 515; S. v.Allen, 161 N.C. 226), and the charge excludes from the jury the consideration of this view; but this does not appear.
There is some evidence that the whiskey came by express from Virginia, but none that the defendant ordered it, or that it came from any one except himself, and nothing inconsistent with absolute ownership by the defendant.
So far as appears from the record, the defendant owned the whiskey, which was either in this State or in Virginia, and made the contract of sale, received the money, and through the Express Company delivered the whiskey in this State, which would constitute an illegal sale. Pfeifer v.Israel, 161 N.C. 409.
He does not purport to act as agent for a house in Virginia nor for Sharp, and throughout the transaction deals with the whiskey as his own, and it would require a strained and highly technical construction of the evidence to reach the conclusion that the defendant ordered the whiskey from a liquor house for the accommodation of the witness, particularly so when the defendant had it in his power to put the question beyond doubt.
The Webb-Kenyon Act is not remotely involved in this case, and we therefore refrain from discussing it.
The validity and construction of that act was argued at this term inKistler v. R. R., in which, in addition to very able briefs on the legal questions involved, statistics are collected as to the growth of the sentiment in behalf of prohibition, which cannot aid us in determining whether Cardwell sold liquor to Sharp.
If there was any error in excluding the evidence offered by the (313) defendant, that the label on the package showed that it came from Danville, it was cured by the admission made by the State.
There was no error in denying the motion to compel the State to elect between the evidence of the different sales. S. v. Freeman, 162 N.C. 596.
No error. *Page 282